**Charles RUEDEMANN Plaintiff,**

v.

**ENERGY OPERATORS, INC. et al. Defendants**

**No. CIV.A. G–02–074.**

United States District Court, S.D. Texas, Galveston Division.

April 19, 2002.

---

Francis I Spagnoletti, Spagnoletti & Assoc, Houston, TX, for Charles Ruedemann, plaintiff.

Edward J Hennessy, Hennessy Gardner and Barth, Houston, TX, for Energy Operators Inc, CMS Energy Inc., defendants.

Edward J Hennessy, Hennessy Gardner and Barth, Houston, TX, Thad T Dameris,

Vinson & Elkins, Houston, TX, for CMS Oil & Gas Co., defendant.

Michael D Murphy, Hays McConn Rice & Pickering PC, Houston, TX, for Hanover Compressor Company Inc, Hanover Compression Inc, defendants.

## ORDER DENYING DEFENDANT ENERGY OPERATORS, INC.'S MOTION TO COMPEL ARBITRATION AND STAY LITIGATION AND DENYING DEFENDANT CMS OIL AND GAS CO.'S MOTION TO COMPEL ARBITRATION AND STAY LITIGATION

KENT, District Judge.

Plaintiff Charles Ruedemann ("Ruedemann") brings this personal injury lawsuit against Defendants Energy Operators, Inc. ("EOI"), CMS Energy, Inc. ("CMS Energy"), CMS Oil and Gas Company ("CMS Oil"), Hanover Compression Company ("HCC") and Hanover Compression, Inc. ("Hanover") seeking damages for injuries that he allegedly sustained while working on a drilling platform off the coast of Africa. Now before the Court are two Motions to Compel Arbitration and Stay Litigation: one filed by EOI on March 18, 2002 and one filed by CMS Oil on March 25, 2002. For the reasons articulated below, EOI and CMS Oil's Motions are both hereby **DENIED**.

### I.

Ruedemann was injured when he allegedly slipped and fell aboard a drilling platform owned by CMS Energy and CMS Oil.[1] At that time, Ruedemann was an independent contractor providing services to CMS Oil on behalf of EOI. These services were tendered pursuant to the "Independent Contractor Agreement" ("IC Agree-

---

1. Ruedemann claims to have slipped on a patch of oil leaked from a compressor. The compressor was allegedly operated by the Hanover Defendants.

ment") executed by EOI and Ruedemann on June 1, 2000. The IC Agreement includes: (1) an arbitration clause providing that "[a]ny dispute, controversy or claim arising out of or relating to this Agreement or Services carried out under this Agreement, including without limitation any dispute as to the construction, validity, interpretation, enforceability or breach of the Agreement, shall be exclusively and finally settled by arbitration" ("Arbitration Clause"); and (2) a general choice-of-law provision stating that "[t]his Agreement shall be governed by the laws of the State of Texas."

On January 30, 2002, Ruedemann filed this lawsuit, alleging that his injuries were caused by the failure of all five Defendants "to exercise reasonable care to insure that ... work [on board the drilling platform] was done in a safe and prudent manner." EOI now seeks an Order compelling Ruedemann to arbitrate his claims against EOI pursuant to the Arbitration Clause in the IC Agreement and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*. CMS Oil moves for a similar Order compelling Ruedemann to arbitrate his claims against CMS Oil.[2] For the reasons articulated below, however, the Court concludes that Ruedemann is not required to resolve any portion of this matter by arbitration.

## II.

■ "[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). Generally, "[t]he court is to make this determination by applying the 'federal substantive law of

arbitrability, applicable to any arbitration agreement within the coverage of the FAA.'" *Id.* (citations omitted). In this case, however, the choice-of-law provision in the IC Agreement states that the Agreement shall be governed by Texas law. This language suggests that Ruedeman and EOI intended the scope of the Arbitration Clause to be determined according to Texas law and specifically, the Texas General Arbitration Act ("TGAA"), Tex. Civ. Prac. & Rem.Code. § 171.001 *et seq.*. The fact that Ruedemann and EOI agreed that "unless otherwise agreed ...the Arbitration hearings will be held in Houston, Texas" also suggests that the Parties intended Texas law to apply. The Court agrees that it does.

Two Fifth Circuit decisions compel the Court to reach this decision. In the first of these decisions, *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243 (5th Cir.1998), the Fifth Circuit conclusively held that parties may designate state law to govern the scope of an arbitration clause in an agreement otherwise covered by the FAA. *See id.* at 248. Consequently, this Court need not decide whether Ruedemann and EOI *may* designate state law to govern the scope of the Arbitration Clause. Rather, the issue the Court must address here is whether Ruedemann and EOI *intended* state law to govern the scope of the Arbitration Clause. If the agreement between Ruedemann and EOI reflects their intent to have the arbitrability of Ruedemann's personal injury claims determined by Texas law, the Court must respect that choice. *See id.*

The second applicable Fifth Circuit decision, *ASW Allstate Painting & Constr. Co. v. Lexington Ins. Co.*, 188 F.3d 307 (5th

---

**2.** CMS Oil argues that it is a third-party beneficiary of the IC Agreement and therefore, able to avail itself of the Arbitration Clause. The Court makes no comment today with

respect to the efficacy of this "third-party beneficiary" argument, however, because the Court's instant ruling renders the issue moot.

Cir.1999), addresses this precise issue. In that case, the Fifth Circuit considered whether "a general choice-of-law provision stating that Texas law applies to the contract" operated to make the TGAA applicable to the contract's arbitration clause. *ASW Allstate*, 188 F.3d at 310. First, the court explained that the FAA "does not preempt state arbitration rules as long as the state rules do not undermine the goals and policies of the FAA." Next, the court stated that the TGAA "can govern the scope of an arbitration agreement without undermining the federal policy underlying the FAA." *Id.* Therefore, the court held that "[b]ecause the ... agreement contains a Texas choice-of-law provision, and Texas arbitration rules do not undermine the federal policy of the FAA ... the TGAA applies to this arbitration agreement." *Id.*

■ Given the direct applicability of *Ford* and *ASW Allstate* to this case, the Court finds that the Arbitration Clause in the IC Agreement is likewise governed by the TGAA and Texas law. As in *ASW Allstate*, the agreement at issue here contains a general choice-of-law provision designating Texas law to govern its terms.[3] And such an agreement is entirely permissible under *Ford*. Therefore, the Court will

abide by EOI and Ruedemann's choice to have Texas law govern the IC Agreement, and more specifically, the scope of the Arbitration Clause. *See Ford*, 141 F.3d at 248–49 ("Only by rigorously enforcing arbitration agreements according to their terms, do we give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind the FAA").

### III.

Having determined that Texas law applies, the next issue for the Court to decide is whether Ruedemann's personal injury claims are arbitrable in Texas. The Court will find that Ruedemann's claims are subject to arbitration if EOI, as the party seeking to compel arbitration, demonstrates that (1) a valid agreement to arbitrate exists, and (2) that the claims raised fall within ambit of that agreement. *See In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex.1999). EOI and Ruedemann apparently do not dispute that the Arbitration Clause constitutes a valid agreement to arbitrate. Thus, the Court need only ask whether EOI has demonstrated that Ruedemann's tort claims are within the scope of the Arbitration Clause.[4]

---

3. The Court acknowledges that the Arbitration Clause in the IC Agreement specifies that "[a]rbitration shall be before one (1) neutral arbitrator to be selected in accordance with the Commercial Rules of the American Arbitration Association and the arbitration shall proceed under the Expedited Procedures of said rules." Furthermore, the Arbitration Clause states that "[t]he Arbitration hearings shall be conducted in accordance with the International Rules of the AAA in effect on the date of this Agreement." This language indicates that EOI and Ruedemann intended for any future arbitration proceedings between them to be conducted in accordance with the procedural rules developed by the American Arbitration Association-not the procedural rules found in the TGAA. This stipulation does not, however, persuade the Court that the TGAA should not govern the scope of the

Arbitration Clause. Unlike the TGAA, neither the Commercial Arbitration Rules nor the International Arbitration Rules of the American Arbitration Association contain substantive provisions governing the validity or enforceability of arbitration agreements. Rather, they consist solely of procedural rules. *See* American Arbitration Association, Commercial Dispute Resolution Procedures (effective Sept. 1, 2000), *available at* www.adr.org; American Arbitration Association, International Arbitration Rules (effective Nov. 1, 2001), *available at* www.adr.org. Thus, the Court finds that the Arbitration Clause cannot be read to indicate that any substantive law, other than the TGAA, is relevant to the issue of whether Ruedemann's personal claims fall within the scope of the Arbitration Clause.

4. Ruedemann argues that this inquiry is unnecessary because the TGAA bars arbitration

When making this determination, the Court must focus on the factual allegations in Ruedemann's Complaint, rather than on the legal cause of action asserted. *See Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 271 (Tex.1992). If the factual allegations giving rise to Ruedemann's tort claims are "so interwoven with the contract that [the tort claims] could not stand alone," those claims are arbitrable. *Valero Energy Corp. v. Wagner & Brown,* 777 S.W.2d 564, 566 (Tex.App.-El Paso 1989, writ denied). Stated differently, the label of Ruedemann's claims is not controlling; rather, the focus lies upon the factual allegations in his Complaint and their relationship to the subject matter encompassed by the Arbitration Clause. *See United Parcel Serv., Inc. v. McFall,* 940 S.W.2d 716, 719 (Tex.App.-Amarillo 1997, no writ). As long as his claims "touch upon matters covered by the agreement," the claims are subject to arbitration regardless of the legal label attached to them. *Id.* In *Ford,* the Fifth Circuit examined the Texas "interwoven with" test and instructed that "[w]hether described as 'touching matters covered by' the agreement, or 'interwoven with' the agreement, a tort claim is 'related to' the agreement *only if reference to the agreement is required to maintain the action.*" *Ford,* 141 F.3d at 250 n. 7. (internal citations omitted) (emphasis added). This is true notwithstanding the fact that the tort claim may implicate the agreement as a factual matter. *Id.*

 Applying the Texas test to the facts of this case, the Court can say with positive assurance that the Arbitration Clause in the IC Agreement does not cover the dispute at issue. The factual allegations in Ruedemann's Complaint are not "touching matters covered by" the agreement or "interwoven with" the agreement, because Ruedemann does *not* need to reference the IC Agreement in order to maintain his personal injury claims against EOI. *See Ford,* 141 F.3d at 250 n. 7. Ruedemann's allegations simply state that Defendants failed to provide Ruedemann with a safe working environment-without referencing the IC Agreement whatsoever or implicating any right or duty arising therein. The IC Agreement does not create a duty on the part of EOI to act in a non-negligent manner regarding Ruedemann's working conditions; and Ruedemann's current cause of action does not derive from any breach of that agreement. EOI may have very well fulfilled all of its contractual duties to Ruedemann in accordance with the IC Agreement, and yet it could still be liable to him for negligence. The fact Ruedemann's personal injury claims may implicate the IC Agreement as a factual matter (i.e. to establish that Ruedemann was an independent contractor) does not

in this case even if Ruedemann's claims fall within the scope of the Arbitration Clause. In making this argument, Ruedemann points out that personal injury claims are not arbitrable under the TGAA unless "(1) each party to the claim, on the advice of counsel, agrees in writing to arbitrate; and (2) the agreement is signed by each party and each party's attorney." Tex. Civ. Prac. & Rem.Code. § 171.002. Next, Ruedemann emphasizes that these specific requirements have not been satisfied in this case. Ruedemann's argument is unpersuasive, however, because the FAA preempts the TGAA's specific requirements regarding personal injury suits in cases involving interstate commerce (and the Parties

in this case apparently agree that Ruedemann was generally engaged in interstate commerce). *See Miller v. Public Storage Management, Inc.,* 121 F.3d 215, 219 (5th Cir.1997) (holding that plaintiff was compelled to arbitrate her state claims for retaliation under the Texas Labor Code, even though Texas law does not favor arbitration for personal injury or workers' compensation claims, because "[t]he FAA preempts conflicting state antiarbitration law"); *see also OPE Int'l L.P. v. Chet Morrison Contractors, Inc.,* 258 F.3d 443, 447 (5th Cir.2001) (explaining that the FAA preempts other state laws that preclude parties from enforcing arbitration agreements covered by the FAA).

change this analysis. *See id.* Therefore, the Court finds that, as a matter of law, EOI has failed to demonstrate that Ruedemann's instant claims are encompassed by the Arbitration Clause in the IC Agreement. Accordingly, EOI and CMS Oil's Motions to Compel Arbitration and Stay Litigation Pending Arbitration are hereby **DENIED.**

**IT IS SO ORDERED.**