Daniel Roehrs, Kieran McGRATH, Ardella Simacek, Michael Flower, Thomas Hazelton, and Rick Hobbs, Appellants

v.

FSI HOLDINGS, INC., Appellee.

No. 05–06–01432–CV.

Court of Appeals of Texas, Dallas.

Feb. 26, 2008.

Craig A. Haynes, Scott P. Stolley, Thompson & Knight, L.L.P., Dallas, TX, for Appellant.

Hugh E. Hackney, Greenberg Traurig, LLP, Dallas, and Mary–Olga Lovett, Greenberg Traurig, LLP, Houston, TX, for Appellee.

Before Justices MOSELEY, FITZGERALD, and MAZZANT.

## OPINION

Opinion by Justice MAZZANT.

Appellee FSI Holdings, Inc. ("FSI") arbitrated a dispute with appellants. A three-arbitrator panel awarded FSI roughly $576,000 against appellants Roehrs and McGrath, awarded FSI nothing on its claims against the other four appellants, and awarded no attorneys' fees. FSI then sought judicial confirmation of its award, which the trial court granted. Appellants Roehrs and McGrath complain about the entry of judgment against them. The other appellants complain that the trial court did not award them their attorneys' fees despite their prevailing in the arbitration. We affirm in part, reverse in part, and remand for further proceedings.

## I. Background and Issues Presented

### A. Facts

This case arises from a dispute over control of a company called Fiber Systems International, Inc. Appellants owned a minority of the shares in that company; a company called CCR, Ltd. owned a majority. The dispute resulted in litigation, which in turn was settled by means of a Stock Purchase Agreement. By that Agreement, appellants agreed to sell their shares in Fiber Systems International, Inc. to CCR, Ltd. and Michael Roehrs. Those purchasers later assigned all their rights under the Agreement to appellee FSI. The Agreement contained a mandatory arbitration clause.

The Agreement marked a cease-fire instead of a lasting peace, and less than a year later FSI demanded arbitration with the American Arbitration Association ("AAA"). In its arbitration demand, FSI accused appellants of breaching warranties and representations contained in the Agreement, and it sought damages totaling about $1.15 million. The parties then skirmished over the make-up of the arbitration panel. The Agreement called for each side to appoint one arbitrator to the panel, and for the two party-appointed arbitrators to appoint the third. At first, FSI selected John A. Chalk, and appellants selected Mark A. Shank. FSI asked the AAA to disqualify Shank, which the AAA eventually did over appellants' protest. Appellants then selected Judge Karen Willcutts as

their party-appointed arbitrator and objected to Chalk. The AAA disqualified Chalk, and FSI replaced him with Richard Faulkner. A third arbitrator, Mike Tabor, was duly appointed, and the dispute was arbitrated over the course of several days.

The arbitration ended in a split decision. The panel unanimously concluded that FSI had not established its claims against appellants Simacek, Flower, Hazelton, and Hobbs, and it ordered that FSI take nothing on its claims against them. A majority of the panel found that FSI had established its breach-of-warranty claim against appellants Roehrs and McGrath, and it awarded FSI $576,118 against those two parties jointly and severally. Judge Willcutts dissented from this part of the award, opining that FSI had failed to prove its damages and that it should take nothing. The panel majority further found that each side had incurred exactly the same amount of attorneys' fees and expenses ($612,000). It ruled that each side was entitled to recover half of its fees and expenses to reflect the parties' "relative success on the merits," and that the resulting awards should be offset so that no one recovered any fees or expenses. Judge Willcutts would have awarded appellants all of their fees and costs. Simacek, Flower, Hazelton, and Hobbs filed a motion with the AAA asking the panel to reconsider its award and to award them their attorneys' fees and expenses, but the panel unanimously denied their motion.

## B. Procedural history

FSI filed this lawsuit against appellants Daniel Roehrs and Kieran McGrath to confirm its arbitration award against them. They answered and counterclaimed for vacatur of the arbitration award on the ground that the arbitration panel exceeded its powers or was unlawfully assembled. FSI then amended to join appellants Simacek, Flower, Hazelton, and Hobbs (the "prevailing defendants"). It still sought confirmation of the award against Roehrs and McGrath, but it prayed alternatively for vacatur of the entire award, including the take-nothing award in favor of the prevailing defendants, in the event Roehrs and McGrath succeeded in their counterclaim. The prevailing defendants answered and counterclaimed for the attorneys' fees and expenses that they had incurred in the arbitration. They styled their counterclaim as one for modification or, in the alternative, partial vacatur of the arbitration award.

FSI filed a "Motion to Confirm, Motion for Summary Judgment, No Evidence Motion for Summary Judgment, and Brief in Support" in which it addressed all of the counterclaims that appellants had then pleaded. Appellants filed their own competing motions for summary judgment, one by Roehrs and McGrath and one by the prevailing defendants. Roehrs and McGrath amended their pleadings to assert fraud, misconduct, and misbehavior as additional grounds for vacatur. FSI then filed a supplemental motion to confirm and for summary judgment. All parties filed responses. After two hearings, the trial court granted FSI's motion and supplemental motion, denied appellants' motions, and confirmed the arbitration award in its entirety. The court later signed a final judgment awarding FSI $576,118 against Roehrs and McGrath jointly and severally. In keeping with the arbitration award, the court awarded no attorneys' fees to any party.

Roehrs, McGrath, and the prevailing defendants appealed. FSI filed a notice of conditional cross-appeal.

## C. Issues presented

Appellants Roehrs and McGrath raise essentially two issues. First, they contend

that the trial court erred by refusing to vacate the arbitration award based on the AAA's disqualification of appellants' initial chosen arbitrator. Second, they contend that the trial court erred by refusing to vacate the arbitration award based on fraud or misconduct by FSI's chosen arbitrator.

The prevailing defendants raise essentially one issue. They contend that the trial court erred by refusing to modify or vacate the portion of the award denying them recovery of their attorneys' fees and expenses incurred in defending the arbitration.

FSI argues principally that the judgment should be affirmed, but it asserts two alternative positions in the event of reversal. First, it contends that a reversal of the judgment against Roehrs and McGrath should result in the vacating of the entire arbitration award, including the part of the award dealing with the prevailing defendants, and a rearbitration of the entire case. Second, it contends that a reversal of the judgment only as to the prevailing defendants should result in the vacating of the award as to attorneys' fees and rearbitration of that issue rather than rendition of the amount of fees and expenses requested by the prevailing defendants.

## II. Analysis

### A. Choice of law

Appellants argue that the Federal Arbitration Act and the Texas Arbitration Act apply concurrently to the issues raised in this case. FSI argues that the TAA alone applies, based on a choice-of-law clause in the Stock Purchase Agreement. That clause provides, "This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to its ruled [sic] governing conflict of laws." Whether the FAA applies in the face of a general choice-of-law clause such as this one presents a "particularly thorny question of contract construction." Note, *An Unnecessary Choice of Law:* Volt, Mastrobuono, *and Federal Arbitration Act Preemption,* 115 Harv. L.Rev. 2250, 2250 (2002).

██ The FAA generally governs the enforceability of an arbitration agreement when the transaction involves interstate commerce. 9 U.S.C.A. §§ 1–2 (West 1999); *Jack B. Anglin Co., Inc. v. Tipps,* 842 S.W.2d 266, 269–70 (Tex.1992) (orig.proceeding). FSI does not dispute that the Agreement involves interstate commerce, but it contends that the parties' general choice-of-law clause trumps the FAA and requires application of the TAA. Some authorities support FSI's position. *E.g., Ruedemann v. Energy Operators, Inc.,* 198 F.Supp.2d 894, 896–97 (S.D.Tex. 2002). But the Texas Supreme Court has held that a choice-of-law clause will not be construed to select the TAA to the exclusion of the FAA unless the clause "specifically exclude[s] the application of federal law." *In re L & L Kempwood Assocs., L.P.,* 9 S.W.3d 125, 127–28 (Tex.1999) (per curiam). A general choice-of-law clause such as the one in the Agreement does not satisfy this standard. *Dewey v. Wegner,* 138 S.W.3d 591, 596 & n. 5 (Tex.App.-Houston [14th Dist.] 2004, no pet.). Accordingly, we apply the FAA, while recognizing that the TAA also applies to the extent it is consistent with the FAA. *In re D. Wilson Constr. Co.,* 196 S.W.3d 774, 779–80 (Tex.2006).

██ On issues of federal law, such as the proper interpretation of the FAA, we must follow the decisions of the United States Supreme Court and the Texas Supreme Court; the decisions of other federal courts, by contrast, may be persuasive but are not binding on us. *Penrod Drill-*

*ing Corp. v. Williams,* 868 S.W.2d 294, 296 (Tex.1993).

## B. Standard of review

The parties also dispute the proper standard of review. Appellants contend that the summary-judgment standard applies to all issues because FSI sought enforcement of the arbitration award by means of a motion for summary judgment. FSI asserts that their motions automatically shifted the burden of proof onto appellants Roehrs and McGrath as to all of their counterclaims asserting grounds for vacating the award. We conclude that the summary-judgment standard of review does apply to the matters raised in appellants' issues.

### 1. Procedures for obtaining confirmation of an arbitration award

■ Procedural matters relating to the confirmation of arbitration awards in Texas courts are governed by Texas law even if the FAA supplies the substantive rules of decision. *Hamm v. Millennium Income Fund, L.L.C.,* 178 S.W.3d 256, 260 n. 3 (Tex.App.-Houston [1st Dist.] 2005, pet. denied). Under the TAA, the trial court shall confirm an arbitration award on application of a party unless grounds are offered for vacating, modifying, or correcting the award. TEX. CIV. PRAC. & REM.CODE ANN. § 171.087 (Vernon 2005). In similar language, the statute provides that the trial court shall vacate or modify an arbitration award on application if proper grounds are present. *Id.* §§ 171.088(a), 171.091(a). If the court does not vacate or modify the award, it shall confirm the award. *Id.* §§ 171.088(c), 171.091(c). A party seeking to modify or vacate an arbitration award bears the ultimate burden of proving the grounds for modification or vacatur. *E.g., Eurocapital Group, Ltd. v. Goldman Sachs & Co.,* 17 S.W.3d 426, 429 (Tex.App.-Houston [1st Dist.] 2000, no

pet.); *see also Mariner Fin. Group, Inc. v. Bossley,* 79 S.W.3d 30, 35 (Tex.2002) (indicating that losing party bears ultimate burden of proving arbitrator's partiality as a ground of vacatur); *Hamm,* 178 S.W.3d at 268 (likening grounds for vacatur to affirmative defenses under Texas Rule of Civil Procedure 94).

■ The TAA provides that each application made under its authority—apparently including not only applications for confirmation but also applications for vacatur and modification—shall be heard by the court "in the manner and with the notice required by law or court rule for making and hearing a motion filed in a pending civil action in a district court." TEX. CIV. PRAC. & REM.CODE ANN. § 171.093. The purpose of this provision is to expedite judicial treatment of matters pertaining to arbitration. *Crossmark, Inc. v. Hazar,* 124 S.W.3d 422, 430 (Tex.App.-Dallas 2004, pet. denied). There is, however, no single "manner" for making and hearing a motion in a civil case in Texas. The burdens of proof vary considerably, as does the permissibility of live and affidavit testimony in support and opposition. *Compare, e.g.,* TEX.R. CIV. P. 120a (special appearance) *with* TEX.R. CIV. P. 166a (summary judgment). It is clear, however, that if a party seeking confirmation of an arbitration award seeks to dispose of its opponent's grounds for vacatur by means of a summary-judgment motion, the usual summary-judgment burdens apply. *See, e.g., Crossmark, Inc.,* 124 S.W.3d at 430 ("[I]f a party chooses to follow summary judgment procedure rather than the simple motion procedure authorized by the [TAA], it assumes the traditional burdens and requirements of summary judgment practice."). In *Mariner Financial Group,* for example, the supreme court reversed the confirmation of an award because the prevailing parties had sought confirmation via a tra-

ditional motion for summary judgment and failed to conclusively disprove the "evident partiality" of the arbitrator. 79 S.W.3d at 35.

■ FSI's motions do not clearly identify any issues as to which it sought "confirmation of the award" as opposed to "summary judgment." After review, we believe that the only fair reading of FSI's motions is that FSI sought summary judgment as to all grounds for vacatur and modification of the arbitration award asserted by Roehrs, McGrath, and the prevailing defendants. All of appellants' issues concern the trial court's rejection of their grounds for vacatur and modification. Accordingly, we will apply the summary-judgment standard of review to appellants' issues.

■ The final procedural wrinkle is that FSI's motions clearly invoke the no-evidence provisions of Texas Rule of Civil Procedure 166a(i) without identifying the specific elements of appellants' counterclaims as to which there is no evidence. This defect may be raised for the first time on appeal, *Crocker v. Paulyne's Nursing Home, Inc.*, 95 S.W.3d 416, 419 (Tex.App.-Dallas 2002, no pet.), but because appellants do not raise this defect as an issue on appeal, we may not consider it, *Selz v. Friendly Chevrolet, Ltd.*, 152 S.W.3d 833, 838 (Tex.App.-Dallas 2005, no pet.). Accordingly, we will construe FSI's motions as presenting no-evidence challenges to all of appellants' counterclaims that are specifically mentioned in those motions.

## 2. Summary-judgment standard of review

Our standard of review for summary judgments is de novo. *Tex. Mun. Power Agency v. Pub. Util. Comm'n*, 51 Tex. Sup.Ct. J. 216, 221 (Dec. 14, 2007). We consider all grounds presented in the summary-judgment motion and affirm if any ground is meritorious. *Sefzik v. City of*

*McKinney*, 198 S.W.3d 884, 890 (Tex.App.-Dallas 2006, no pet.).

The trial court properly grants a no-evidence motion for summary judgment if, after adequate time for discovery, the moving party asserts that there is no evidence of one or more specified elements of a claim or defense on which the adverse party would have the burden of proof at trial and the respondent produces no summary-judgment evidence raising a genuine issue of material fact on those elements. *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex.2006) (per curiam). We review the evidence in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006) (applying the standards announced in *City of Keller v. Wilson*, 168 S.W.3d 802 (Tex.2005), to a no-evidence summary judgment). The scope of our review includes both the evidence presented by the movant and the evidence presented by the respondent. *Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.*, 227 S.W.3d 876, 881 (Tex.App.-Dallas 2007, no pet.).

The trial court properly grants a traditional motion for summary judgment if the movant conclusively disproves an essential element of its opponent's claim. *Henson v. Sw. Airlines Co.*, 180 S.W.3d 841, 843 (Tex.App.-Dallas 2005, pet. denied). Like the trial court, we must consider the evidence in the light most favorable to the nonmovant and resolve all doubts in the nonmovant's favor. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex.2005).

## C. Vacatur under § 10(a)(4) of the FAA

■ "Under the FAA, the validity of an arbitration award is subject to attack

only on grounds listed in sections 10 and 11 of the Act." *Thomas James Assocs., Inc. v. Owens,* 1 S.W.3d 315, 319–20 (Tex. App.-Dallas 1999, no pet.). A court may vacate an arbitration award "where the arbitrators exceeded their powers." 9 U.S.C.A. § 10(a)(4) (West Supp.2007). One way that a panel of arbitrators can exceed its powers under the FAA is by failing to follow the parties' agreement regarding the composition of the panel. For example, a panel of two arbitrators exceeds its powers by deciding a case if the parties' agreement requires arbitration before a panel of at least three arbitrators. *Szuts v. Dean Witter Reynolds, Inc.,* 931 F.2d 830, 831–32 (11th Cir.1991).

Roehrs and McGrath argue that the arbitrators exceeded their powers in this case because the panel was not constituted in accordance with the arbitration agreement. They contend that the Agreement gave them an exclusive right to select one of the three arbitrators, and that the AAA had no power to disqualify their selected arbitrator on grounds of partiality. Thus, they argue, the AAA's disqualification of their selection, Mark Shank, violated the terms of the arbitration agreement and deprived the panel as later constituted of any authority to render a binding award against them. Alternatively, they argue that the AAA misapplied its own rules regarding disqualification of arbitrators for partiality. We reject their contentions and affirm FSI's traditional summary judgment on this counterclaim based on two conclusions. First, the evidence conclusively establishes that appellants did agree to abide by the AAA's standards regarding the impartiality of party-selected arbitrators. Second, the evidence establishes that the AAA's disqualification of Shank was not so irrational or in such manifest disregard of its own rules as to permit vacatur under the FAA.

### 1. Roehrs and McGrath adequately preserved error.

We briefly address an argument by FSI that Roehrs and McGrath waived error by failing to object to the composition of the arbitration panel at the time of the arbitration hearing. A party that learns of a basis for objecting to an arbitrator must promptly object in the arbitration proceeding to avoid waiving the complaint. *Burlington N.R.R. Co. v. TUCO, Inc.,* 960 S.W.2d 629, 637 n. 9 (Tex.1997); *Kendall Builders, Inc. v. Chesson,* 149 S.W.3d 796, 804 (Tex.App.-Austin 2004, pet. denied). In this case, although Roehrs and McGrath did not object to Shank's disqualification at the commencement of the arbitration hearing, they did oppose his disqualification earlier when FSI objected to Shank's service. The AAA set a deadline for appellants to respond to FSI's objection, and appellants responded in writing within the deadline. When the AAA disqualified Shank, appellants protested that decision in writing, reurging their grounds for opposing Shank's removal and advising that they were proceeding with the arbitration only under protest. And, as Roehrs and McGrath point out, the chairman of the arbitration panel directed the parties at the very beginning of the hearing to make any objections to the arbitrators or the panel directly to the AAA—the same body that had already ruled on their complaint.

Under these circumstances, we conclude that Roehrs and McGrath objected to Shank's removal in a manner sufficient to preserve any error.

### 2. The parties agreed to the AAA's rules requiring party-appointed arbitrators to be neutral.

To determine whether the arbitration panel was constituted in accordance

with the parties' contract, we must first ascertain the terms of their agreement.

Roehrs and McGrath rely solely on the terms of the Stock Purchase Agreement, which provides, "The arbitration panel shall consist of three (3) arbitrators, one of whom shall be appointed by each party hereto.... The two arbitrators thus appointed shall choose the third arbitrator[.]" The Agreement also provides that the AAA's commercial arbitration rules will apply "to the extent such AAA Rules are not inconsistent with this Agreement." Roehrs and McGrath contend that the Agreement gave each side an "exclusive right" to appoint one of the arbitrators and that the disqualification provisions of the AAA's commercial arbitration rules are therefore inconsistent with the arbitrator-selection procedures set forth in the Agreement. Specifically, Section R–12 of the commercial arbitration rules of the AAA provides, "Where the parties have agreed that each party is to name one arbitrator, the arbitrators so named must meet the standards of Section R–17 with respect to impartiality and independence unless the parties have specifically agreed pursuant to Section R–17(a) that the party-appointed arbitrators are to be non-neutral and need not meet those standards." Section R–17 provides generally that arbitrators are subject to disqualification by the AAA for "partiality," but it goes on to provide that "[t]he parties may agree in writing, however, that arbitrators directly appointed by a party pursuant to Section R–12 shall be nonneutral, in which case such arbitrators need not be impartial or independent and shall not be subject to disqualification for partiality or lack of independence."

But these provisions are not the end of the story. FSI contended in its motion that during the arbitration the parties specifically agreed that the party-appointed arbitrators would act as neutrals and be subject to the AAA's rules regarding impartiality. FSI supported its argument with a letter that the AAA sent both sides on July 7, 2004. The letter recites that both sides had participated in a conference call that day in which they discussed several items. The letter lists the items that were discussed, including the following: "Claimant will name its party-appointed arbitrator by July 12, 2004. This will confirm the parties have agreed the party-appointed arbitrators shall be neutral and therefore subject to impartiality standards in accordance with the Rules." In their summary-judgment response, Roehrs and McGrath did not address FSI's contention that the parties expressly agreed to abide by the AAA's rules regarding arbitrator impartiality after the arbitration was underway. Nor did they attempt to rebut FSI's evidence of that agreement.

The summary-judgment evidence further corroborates the existence of the agreement referred to in the July 7, 2004 letter. For example, after the parties made their selections, the AAA sent another letter to both sides advising them that the AAA had appointed Chalk and Shank "to serve as neutral party-appointed arbitrators." This further confirms that the parties had agreed to the AAA's requirements concerning the neutrality and impartiality of arbitrators. A few days later, FSI objected to Shank's appointment based on facts that allegedly "create[d] at least the appearance of impropriety." Appellants' response to FSI's objection was grounded entirely in their interpretation of the AAA's commercial arbitration rules and not in the parties' supposedly exclusive right to select any arbitrator they desired. At most, appellants argued generally that their right to select a particular arbitrator "should not be lightly disregarded." This is not the same as asserting that the parties' rights under the Agree-

ment were exclusive and absolute or that the AAA lacked the power to disqualify an arbitrator under its own rules. Only later, after the AAA had already disqualified Shank, did appellants argue that the Agreement did not give the AAA the right to remove a party-appointed arbitrator.

 Parties to an arbitration agreement can later agree to modify its provisions regarding the composition of the arbitration panel. *See Frere v. Orthofix, Inc.*, No. 99–CIV–4049, 2002 WL 1543857, at *5 (S.D.N.Y. July 15, 2002) (enforcing parties' agreement to proceed with one arbitrator instead of three as specified in their contract), *aff'd,* 92 Fed.Appx. 832 (2d Cir.2004). We conclude that the evidence conclusively establishes that the parties agreed to abide by the AAA's rules and standards for impartiality as to the party-appointed arbitrators and that this agreement superseded any contrary provisions in the Agreement.[1] Thus, we need not decide whether the terms of the Agreement entitled Roehrs and McGrath to appoint Shank despite the AAA's rules. The fact that the parties' express agreement to the AAA's rules concerning partiality was oral does not deprive it of effect. "[A] written agreement not required by law to be in writing may be modified by a later oral agreement, even though it provides that it can be modified only in writing." *Double Diamond, Inc. v. Hilco Elec. Co-op., Inc.*, 127 S.W.3d 260, 267 (Tex.App.-Waco 2003, no pet.); *accord Group Hosp. Servs., Inc. v. One & Two Brookriver Ctr.*, 704 S.W.2d 886, 890 (Tex.App.-Dallas 1986, no writ). Although the FAA requires the agreement to arbitrate to be in writing, 9 U.S.C.A. § 2 (West 1999), it expressly contemplates that the method of selecting the arbitrators need not be in writing, *see* 9

U.S.C. § 5 (West 1999) (requiring contractual method of selecting the arbitrator to be followed if a method is specified and providing for court appointment if not). In this case, the evidence established that the parties agreed that the AAA's impartiality standards applied to the parties' chosen arbitrators. Roehrs and McGrath's contention to the contrary is without merit.

### 3. The AAA was entitled to apply its impartiality standards as it did.

Roehrs and McGrath argue in the alternative that the AAA violated its own rules when it sustained FSI's objection and disqualified Shank. Specifically, they argue (1) that FSI failed to invoke any valid ground for disqualification in its objection to Shank and (2) that FSI's objection was not supported by any evidence. Accordingly, they contend, the panel was improperly constituted and "exceeded its authority" by deciding this case.

 The AAA's rules provide that the AAA will decide whether an arbitrator is disqualified under its rules and that the AAA's disqualification decision "shall be conclusive." Several courts have said that an arbitral body's interpretation of its own rules must be given substantial deference. *E.g., York Research Corp. v. Landgarten,* 927 F.2d 119, 123 (2d Cir.1991); *Stroh Container Co. v. Delphi Indus., Inc.,* 783 F.2d 743, 748–49 (8th Cir.1986); *see also Am. Realty Trust, Inc. v. JDN Real Estate—McKinney, L.P.,* 74 S.W.3d 527, 531 (Tex.App.-Dallas 2002, pet. denied) (" '[P]rocedural' questions concerning the dispute and bearing on its final disposition are left to the arbitrator."); *Bulko v. Morgan Stanley DW Inc.,* 450 F.3d 622, 626 (5th Cir.2006) ("In the absence of a specific

---

1. Although the statement in the July 7, 2004 letter from the AAA that we rely on in reaching this conclusion is hearsay, hearsay that is admitted without objection is not denied probative value merely because it is hearsay. Tex.R. Evid. 802.

agreement to the contrary, determining [an arbitrator's] qualifications and eligibility is a matter left to the NASD."). For example, the Houston Fourteenth Court of Appeals has held that the sufficiency of pleadings in an arbitration is a procedural matter for the arbitrators to decide. *Kline v. O'Quinn*, 874 S.W.2d 776, 782–83 (Tex.App.-Houston [14th Dist.] 1994, writ denied).

 It is not clear that the FAA authorizes vacatur of an arbitration award based on the AAA's allegedly erroneous disqualification of an arbitrator for partiality under its own procedural rules. The FAA authorizes vacatur for "evident partiality" of arbitrators, 9 U.S.C.A. § 10(a)(2) (West Supp.2007), but not for an arbitral body's disqualification of an arbitrator under its own rules and standards. We agree with the Eighth Circuit that vacatur based on a procedural error requires, at the very least, a showing that the AAA manifestly disregarded its own rules. *See Stroh*, 783 F.2d at 749 (opining that the appropriate standard is even more lenient than the manifest-disregard standard but finding that the AAA's decision passed muster under that standard). Following *Stroh*, we conclude that the evidence establishes that the AAA did not so manifestly disregard its own rules as to permit vacatur of the award. First, under the parties' agreement and the AAA rules, the sufficiency of FSI's objection to a proposed arbitrator was a procedural matter for the AAA to decide. *See Kline*, 874 S.W.2d at 782–83 (deferring to arbitrators' interpretation of arbitration pleading requirements). Likewise, the AAA's decision on the merits of FSI's objection to Shank was not so irrational that we may substitute our judgment for the AAA's. Shank's disclosure revealed that he knew one of Roehrs and McGrath's attorneys through many professional activities and that he had worked on judicial campaigns for that same attorney's wife. Whether we would agree, or whether the evidence would be sufficient to support a finding of "evident partiality" under the FAA, we cannot say the AAA's decision to disqualify Shank under its "partiality or lack of independence" standard constitutes a manifest disregard for its own rules.

Roehrs and McGrath rely on an opinion from the Seventh Circuit for the proposition that the AAA's violation of its own rules can be the basis for vacating an arbitration award. *Health Servs. Mgmt. Corp. v. Hughes*, 975 F.2d 1253 (7th Cir. 1992). In that case, two arbitrators disclosed to the AAA that they had past relationships with one of the arbitrating parties, Charles Hughes. *Id.* at 1255. In violation of its own mandatory rule, the AAA did not forward those disclosures to the parties, but Hughes's opponent, HSM, eventually learned about those past relationships directly from the arbitrators themselves. *Id.* HSM did not object to the two arbitrators' continuing to serve on the case, but after it lost the arbitration it went to federal court to try to set the award aside. *Id.* at 1255–56. The district court confirmed the award, and the Seventh Circuit affirmed, holding that HSM had waived any error arising from the AAA's failure to forward the arbitrators' disclosures to HSM. *Id.* at 1260–64. It is true that the Seventh Circuit opined in dicta that the AAA's failure would have justified vacatur if HSM had preserved error. *Id.* at 1260. But the context makes it clear that the AAA's failure would have justified vacatur because that failure to disclose violated the "evident partiality" standard of § 10 of the FAA as interpreted by the Supreme Court in *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), and not merely because the failure to disclose violated AAA

rules. *See generally Health Servs. Mgmt. Corp.*, 975 F.2d at 1260. The instant case does not involve an arbitrator who actually served despite "evident partiality," so *Health Services* is inapposite.

### 4. Conclusion

The parties agreed that their chosen arbitrators would be subject to the AAA's standards concerning impartiality. The AAA's interpretation and enforcement of its own standards is entitled to great judicial deference. The trial court correctly granted FSI's motion for summary judgment and denied Roehrs and McGrath's motion for summary judgment as to Roehrs and McGrath's counterclaim seeking vacatur on the ground that the arbitrators exceeded their powers by proceeding without Shank as a panel member.

### D. Vacatur under §§ 10(a)(1) and 10(a)(3)

Roehrs and McGrath contend that the trial court should not have confirmed the award because arbitrator Faulkner failed to disclose the fact that he is not licensed to practice law in Texas. They contend that Faulkner thereby committed fraud, misconduct, or misbehavior justifying vacatur under the FAA.

The evidence shows that Faulkner included his CV in his disclosures to the parties in the arbitration. That CV lists a Dallas office address, shows that Faulkner has a J.D. and an L.L.M., and describes him as "Attorney–Mediator–Arbitrator–Dispute Board Chairman." It also recites that he is a "Former Trial Judge—Tarrant County, Texas" and states that from 1991 to the present he has been a "Municipal Judge–State Magistrate–State of Texas." On page five, under the heading "Private Practice," the CV lists the law firm of Richard D. Faulkner & Associates, P.C., followed by this description: "Civil practice with an emphasis in business litigation and arbitration, construction and maritime creditors litigation and maritime personal injury litigation. General Counsel to Frye Engineering and to F. & H. General Services Company, (commercial electrical contractors)." This item does not state, however, that Faulkner is currently working as part of that firm, and we note that this firm name does not appear on the first page of his CV with his business address. Under "Bar Admissions," the CV lists eight federal courts (including all four federal district courts in Texas) and the Supreme Court of the State of Louisiana, but it does not list the Texas Supreme Court.

### 1. FSI did not attack all grounds relating to Faulkner.

At the outset, Roehrs and McGrath contend that the judgment must be reversed because FSI's motions attacked only their counterclaim for vacatur based on fraud and not their counterclaim for vacatur based on alleged misconduct and misbehavior. The leading case is *Chessher v. Southwestern Bell Telephone Co.*, in which the supreme court held that the trial court cannot grant summary judgment on a cause of action not addressed in the summary-judgment motion. 658 S.W.2d 563, 564 (Tex.1983) (per curiam). We agree with Roehrs and McGrath, noting that we must still address the merits of this appeal as to the issues that were properly presented in the trial court. *Bandera Elec. Coop., Inc. v. Gilchrist*, 946 S.W.2d 336, 337 (Tex.1997); *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 836 (Tex.App.-Dallas 2000, no pet.).

Fraud, misconduct, and misbehavior are separate grounds for vacatur under the FAA. 9 U.S.C.A. §§ 10(a)(1), 10(a)(3) (West Supp.2007). The elements of fraud under the FAA are (1) fraud, which must be proved by clear and convincing evidence, (2) that the fraud was not

discoverable upon the exercise of due diligence before or during the arbitration, and (3) that the fraud materially related to an issue in the arbitration. *Henry v. Halliburton Energy Servs., Inc.,* 100 S.W.3d 505, 510 (Tex.App.-Dallas 2003, pet. denied). The statute seems to limit "misconduct" to cases in which an arbitrator denies a postponement of the hearing or refuses to hear material evidence, but "misbehavior" is a catch-all for other procedural irregularities such as an arbitrator's running afoul of his or her own rules in conducting the arbitration or receiving evidence ex parte. *Totem Marine Tug & Barge, Inc. v. N. Am. Towing, Inc.,* 607 F.2d 649, 652–53 (5th Cir.1979); *Weinberg v. Silber,* 140 F.Supp.2d 712, 720 (N.D.Tex. 2001), *aff'd,* 57 Fed.Appx. 211 (5th Cir. 2003).

 FSI argues that Roehrs and McGrath's pleadings were not adequate to raise misconduct and misbehavior as grounds for vacatur. We disagree. In their live pleading, Roehrs and McGrath pleaded that the award should be vacated "because the rights of [appellants] were prejudiced by misconduct and willful misbehavior by Faulkner." They then pleaded that Faulkner "represented and held himself out as an attorney licensed and practicing in Texas." They concluded, "Because of Faulkner's misconduct and willful misbehavior, the award was obtained by and tainted with fraud." FSI did not specially except. We conclude that, under our liberal pleading rules, Roehrs and McGrath adequately pleaded all three grounds for vacatur.

 FSI also argues that its supplemental motion was sufficient to shift the burden of proof to Roehrs and McGrath on their issues of misconduct and misbehavior, even though FSI did not mention either ground in that motion. FSI's theory is that a motion to confirm an arbitration award automatically shifts the burden of proof on all grounds for vacatur to the responding party, even if the moving party also references the summary-judgment rule. We disagree. We have recognized that a party may invoke the summary-judgment rule as its route to confirmation of an arbitration award, thereby triggering all summary-judgment burdens and deadlines. *Crossmark, Inc.,* 124 S.W.3d at 430. Moreover, FSI clearly opted to proceed under the summary-judgment rule as to Roehrs and McGrath's fraud ground: "FSI respectfully requests that the Court ... grant FSI summary judgment on Defendants' fraud claim and confirm the arbitration award." Although FSI's supplemental motion also included a prayer seeking confirmation of the arbitration award, which could be construed as an implicit request for judgment against Roehrs and McGrath on their counterclaims based on misconduct and misbehavior, it did not discuss those counterclaims or state any grounds for dismissing them. Viewing FSI's supplemental motion as a whole, we conclude that it did not present any grounds for summary judgment, either traditional or no-evidence, on those counterclaims. *Chessher* requires reversal. 658 S.W.2d at 564.

FSI also argues that the grounds of misconduct and misbehavior are barred by the TAA, which requires a party to apply for vacatur not later than 90 days after the date of delivery of a copy of the award to the applicant. Again, FSI asserted this ground in the trial court only as to Roehrs and McGrath's counterclaim that the award was procured by fraud. The ground cannot justify the trial court's granting of judgment against Roehrs and McGrath on their counterclaims of misconduct and misbehavior.

We must reverse the summary judgment and remand for further proceedings

on Roehrs and McGrath's vacatur counterclaims for misconduct and misbehavior by Faulkner. Roehrs and McGrath did not move for summary judgment on these counterclaims, so we need say nothing further about them.

### 2. Roehrs and McGrath adduced no evidence of fraud.

■ We agree with FSI that the trial court properly granted a no-evidence summary judgment against Roehrs and McGrath on the issue of fraud. The FAA does not define "fraud" as that term is used in § 10(a)(1), and we find little case law interpreting it. The Fifth Circuit has held that fraud under the FAA "requires a showing of bad faith during the arbitration proceedings, such as bribery, undisclosed bias of an arbitrator, or willfully destroying or withholding evidence." *In re Arbitration Between Trans Chem. Ltd. and China Nat'l Mach. Imp. & Exp. Corp.*, 978 F.Supp. 266, 304 (S.D.Tex.1997), *aff'd and adopted in pertinent part*, 161 F.3d 314 (5th Cir.1998). That court held that a party's late production of evidence to the other side does not constitute fraud, at least when there is no showing that the evidence was intentionally or recklessly withheld. *Id.* As an example of fraud, the Eleventh Circuit held in one case that an expert witness's perjury in falsifying his credentials during the arbitration constituted fraud warranting partial vacatur of the resulting award. *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1383–84 (11th Cir.1988). In the *Henry v. Halliburton Energy Services* case, we cited *In re Arbitration* for the elements of fraud under the FAA, holding that Halliburton's shredding of documents that were unrelated to Henry's claim could not justify vacatur because the shredding was not materially related to any issue in the arbitration. 100 S.W.3d at 510.

Roehrs and McGrath point to no evidence that Faulkner or FSI acted in bad faith with respect to the CV in question, nor does the CV rise to the level of misconduct equivalent to bribery, undisclosed bias, or destruction of evidence. Nowhere in the CV does Faulkner state that he is licensed to practice law in Texas. Viewing the entire CV as a whole, as we must under *City of Keller v. Wilson*, 168 S.W.3d 802, 811–12 (Tex.2005), we do not even believe it is misleading. Only one reasonable inference arises from a CV containing a list of "bar admissions" that consists of eight federal courts and the Supreme Court of Louisiana—the author of the CV is not admitted to practice in any state courts except those of Louisiana. A CV is not an occasion for humility, so the maxim *inclusio unius est exclusio alterius* appropriately applies to Faulkner's list of bar admissions.

The trial court properly concluded that Roehrs and McGrath's evidence did not raise a genuine issue of material fact that Faulkner committed fraud in connection with his CV.

### 3. Conclusion

The trial court erred by confirming the arbitration award against Roehrs and McGrath because FSI's motions to confirm and for summary judgment did not address all grounds for vacatur that Roehrs and McGrath pleaded. The trial court correctly granted summary judgment in favor of FSI on Roehrs and McGrath's counterclaim that the arbitration award was procured by fraud, but we must reverse the judgment and remand for further proceedings as to their counterclaims based on misconduct and misbehavior.

### E. The prevailing defendants' request for their arbitration attorneys' fees

The prevailing defendants (appellants Simacek, Flower, Hazelton, and Hobbs)

complain about the trial court's refusal to grant them any relief on their complaint that the arbitration award did not award them their attorneys' fees, even though they prevailed on the merits in the arbitration. They argue that the court should have modified the award pursuant to its powers under § 11(a) of the FAA and alternatively that the court should have vacated the award in part because the arbitration panel exceeded its authority. We reject the prevailing defendants' arguments and conclude that the trial court properly granted FSI's motion for summary judgment and denied the prevailing defendants' motion for summary judgment.

**1. The prevailing defendants adduced no evidence of "an evident miscalculation of figures."**

The FAA authorizes the court to modify or correct an arbitration award if there is "an evident miscalculation of figures" in the award. 9 U.S.C.A. § 11(a) (West 1999). Construing the parallel provision in the TAA, we have held that "[a] court may not overturn an award based upon 'evident miscalculation of numbers' unless the mistake is clear, concise, and conclusive from the record." *Crossmark, Inc.*, 124 S.W.3d at 436. Moreover, " '[m]iscalculation' implies inadvertence or an error caused by oversight." *Id.* One federal court of appeals has indicated that a miscalculation of figures is "evident" only if it appears on the face of the arbitration award itself. *Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.*, 142 F.3d 188, 194 (4th Cir. 1998). For example, a calculation of interest based on the wrong number of months has been held to be an "evident miscalculation of figures." *Ehrich v. A.G. Edwards & Sons, Inc.*, 675 F.Supp. 559, 565–66 (D.S.D.1987).

In this case, the arbitrators did not commit any miscalculation with respect to their refusal to award attorneys' fees to either side. They found that each side's attorneys' fees and expenses amounted to $612,000. They awarded each side half of its fees and expenses to reflect the parties' "relative success on the merits," and they offset the resulting awards against each other to result in take-nothing awards for each side. The prevailing defendants filed a motion for reconsideration on the issue of fees and expenses, but the panel unanimously denied their motion. There is simply no way to categorize the arbitrators' reasoned decision to deny the prevailing defendants an award of fees as the result of an error caused by inadvertence or oversight. *Crossmark, Inc.*, 124 S.W.3d at 436. The prevailing defendants adduced no evidence of an "evident miscalculation of figures," so the trial court correctly refused to modify the arbitration award under § 11(a) of the FAA.

**2. The prevailing defendants adduced no evidence that the denial of fees should be vacated.**

The prevailing defendants argue in the alternative that the arbitrators' failure to award them their attorneys' fees and expenses exceeded the panel's authority, justifying vacatur under § 10(a)(4) of the FAA. They argue that the arbitrators erred by disregarding the terms of the Agreement, which provided that the arbitrators "shall be instructed ... to allocate all costs and expenses of such arbitration (including legal and accounting fees and expenses of the respective parties) to the parties in the proportions that reflect their relative success on the merits (including the successful assertion of any defense)."

Although couched in terms of whether the arbitrators "exceeded their powers," the prevailing defendants' argument actually amounts to a contention that the arbitrators committed an error of law by refusing to award them their fees and

expenses. When it comes to claims of substantive errors of this sort, federal courts agree that an award may be set aside under the FAA only for "manifest disregard of the law," which is a "severely limited" standard of review. *Bear, Stearns & Co., Inc. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 90 (2d Cir.2005). A mere error of law will not suffice; rather, the arbitrators must have appreciated the existence of the applicable legal principle but decided to ignore or disregard it. *Brabham v. A.G. Edwards & Sons, Inc.*, 376 F.3d 377, 381–82 (5th Cir.2004). Some courts have expressed the test in terms of whether the award "draws its essence" from the contract. *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320 (5th Cir.1994). This test is also very deferential; the award may not be set aside if it is "rationally inferable" from the letter or the purpose of the contract. *Id.* at 1325.

■■■ The prevailing defendants seek rendition of an award of attorneys' fees and expenses in their favor totaling $408,000, which they calculate strictly as their per-capita share of the $612,000 in defense costs that the arbitrators found that their side incurred in the arbitration. The Agreement, however, does not require the arbitrators to award attorneys' fees on a per-capita basis. Rather, the Agreement calls for an allocation of fees and expenses to the parties in proportion to their relative success on the merits, which the arbitrators reasonably could have read to require each party to prove his or her own actual attorneys' fees and expenses in the arbitration as a prerequisite for recovery. The prevailing defendants, however, point to no evidence from the arbitration demonstrating what each of them separately paid in attorneys' fees and expenses. Nor have they rebutted FSI's assertion in its appellate brief that the prevailing defendants adduced no evidence in the arbitration that

their side's fees were equally borne by all six members (the prevailing defendants, plus Roehrs and McGrath). It was their responsibility to point out such evidence if it exists; it is not our duty to sift through the 2,800–page arbitration transcript. *Hakemy Bros., Ltd. v. State Bank & Trust Co., Dallas*, 189 S.W.3d 920, 927–28 (Tex. App.-Dallas 2006, pet. denied).

It was not plainly irrational for the arbitrators to assess attorneys' fees and expenses on a per-side basis if that is how each side proved up its fees. FSI won roughly half of the amount it sought from the opposing side in the arbitration, and the arbitrators found that each side spent the same amount in fees and expenses. Under these circumstances, there is no evidence that the arbitrators manifestly disregarded the law or the Agreement by offsetting the awards of fees and expenses against each other on a per-side basis and awarding zero fees and expenses. Consequently, the trial court correctly granted summary judgment for FSI and against the prevailing defendants.

## III. Conclusion

The trial court correctly granted summary judgment against appellants Simacek, Flower, Hazelton, and Hobbs on their counterclaim. The trial court also correctly rejected as a matter of law the counterclaims by appellants Roehrs and McGrath that the arbitrators exceeded their authority by proceeding without Shank and that the award was procured by fraud. However, the trial court erred by granting summary judgment on Roehrs and McGrath's counterclaim based on alleged misconduct or misbehavior by arbitrator Faulkner, so we reverse and remand as that counterclaim only. Given this disposition, we need not address the issues raised by FSI in its conditional cross-appeal.

Accordingly, we reverse the judgment of the trial court in part and remand for further proceedings on appellants Roehrs and McGrath's counterclaim based on alleged misconduct or misbehavior by arbitrator Faulkner. We affirm the remainder of the trial court's judgment.