John L. `DANIEWICZ, Preston S. Brown, F. Lynn Whitehead, Gary L. Warren and B. Randall Jean, Appellants,

v.

THERMO INSTRUMENT SYSTEMS, INC.; TN Technologies, Inc.; Ramsey Technology, Inc. (a/k/a Thermo Sentron); Thermedics, Inc.; and Epsilon Industrial, Inc., Appellees.

No. 03–98–00633–CV.

Court of Appeals of Texas, Austin.

May 20, 1999.

R. James George, Jr., George, Donaldson L.L.P., Austin, for appellants.

Sam Johnson, Scott, Douglass & McConnico, L.L.P., Austin, for appellees.

Before Chief Justice ABOUSSIE, Justices KIDD and PATTERSON.

MACK KIDD, Justice.

Appellants John L. Daniewicz, Preston S. Brown, F. Lynn Whitehead, Gary L. Warren, and B. Randall Jean (collectively the "CannonBear Group") appeal from a judgment confirming the clarification of an arbitration award. The arbitration arose out of a contract dispute between the CannonBear Group and appellees Thermo Instrument Systems, Inc.; TN Technologies, Inc.; Ramsey Technology, Inc. (a/k/a Thermo Sentron); Thermedics, Inc.; and Epsilon Industrial, Inc. (collectively "Thermo")[1] over royalties due on a series of products. In two points of error, the CannonBear Group contends that the trial court erred in confirming the arbitration panel's clarification order, which the CannonBear Group argues was actually a modification of the original order, and in refusing to order an independent accounting of royalties owed to the CannonBear Group. We will affirm the trial court's judgment.

## BACKGROUND

In 1986, the CannonBear Group formed CannonBear, Inc., which developed and marketed industrial microwave measurement devices. In 1989, the CannonBear Group sold CannonBear, Inc. to Thermo for $2,000,000. Pursuant to the contract,[2]

---

1. The CannonBear Group originally sold CannonBear Inc. to Ramsey Technology Inc. ("Ramsey"). Thermo Instrument Systems, Inc. acquired CannonBear Inc. when it purchased Ramsey. In the interest of clarity, we will refer to all appellees as "Thermo."

2. The transaction involved three interrelated agreements: the Asset Purchase Agreement;

Thermo promised to use its "best efforts" in developing and promoting CannonBear products and agreed to pay royalties on the sales of those products and their derivatives for twelve years.[3] The parties agreed that any controversy or claim arising out of, or related to the contract, or its breach, would be settled by arbitration.

In 1996, the CannonBear Group initiated an arbitration proceeding, alleging that Thermo had failed to use its best efforts to develop and promote the CannonBear products. The CannonBear Group also alleged that the RCM, a new Thermo product, was derived from technology characteristic of CannonBear products and thus the CannonBear Group was entitled to royalties from all past and future sales of the RCM.

After an extensive proceeding, the arbitration panel determined that Thermo *had* breached its contractual obligation to use its best efforts in developing and marketing the CannonBear products. Additionally, the panel concluded that the RCM *was* a derivative of the original CannonBear products. Consequently, the panel issued the following award:

> [Thermo] shall be liable jointly and severally to pay to [the CannonBear Group] the sum of Four Million Dollars and No Cents ($4,000,000.00) as damages under their contracts relating to the Cannon-Bear products and the GMS product. Thermo shall be liable jointly and severally to pay to CannonBear Group *all royalties payable under their contracts for the balance of the term of the contracts* for both GMS and microwave products.
> Thermo shall be liable jointly and severally to pay to CannonBear group all royalties to which they are entitled to, or

which they may become entitled to, under the contract on sales of the RCM (less any amounts attributable to the process seal on the RCM product which have been paid by Thermo to Cannon-Bear Group).
> Thermo shall be liable jointly and severally to pay to CannonBear Group the sum of Seven Hundred and Fifty Thousand Dollars and No Cents ($750,000.00) for attorney's fees.
> * * *
> *This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are, hereby denied.*

(Emphasis added.) Pursuant to the award, Thermo paid the CannonBear Group $4,000,000 "as damages under their contracts relating to the CannonBear products and the GMS product," $750,000 in attorney's fees, and $132,997.20 for past-due royalties on the RCM.

After issuance of the award, the CannonBear Group sent Thermo a letter asserting that the arbitration award was merely a "starting place" in resolving the parties' dispute. The letter indicated that the CannonBear Group viewed the award as compensation only for Thermo's *past* breach of the "best efforts" clause. Thus, the CannonBear Group argued that in order to avoid future litigation, Thermo must expand and market the CannonBear product line through the end of the royalty period.

In response to the letter, Thermo filed a Motion to Clarify requesting that the arbitration panel clarify its award to reflect that the $4,000,000 award covered *all* of the CannonBear Group's damages for Thermo's failure to use their "best ef-

---

the Option and Royalty Agreement; and the Employment and Royalty Agreement. We will refer to the agreements collectively as the "contract."

**3.** There were two sets of products on which Thermo was obligated to pay royalties: the existing CannonBear products and a develop-

mental product referred to as "GMS." Thermo agreed to pay royalties on the existing CannonBear products through July 6, 2001 and on the GMS through January 9, 2005. We will refer to the products collectively as the "CannonBear products."

forts," both in the past and in the future. In response to Thermo's motion, the CannonBear Group noted that the original award required that Thermo pay royalties "payable under their contracts for the balance of the term of the contracts." The CannonBear Group argued that the panel had thus unambiguously ordered Thermo to continue to comply with the "best efforts" clause for the remainder of the contract term. The CannonBear Group further argued that Thermo's request constituted an impermissible modification of the original award rather than a clarification, and the panel had no authority to revisit the merits of the controversy.

The panel rejected the CannonBear Group's interpretation and issued the following clarification order:

> We hereby clarify the Original Award to (a) specifically state that the Original Award was not solely an award for past due royalties; it covers all of the CannonBear Group's damages for Thermo's failure to use their best efforts, both to date and in the future, for the entire twelve-year royalty periods respectively applicable to both the CannonBear Products and the GMS Product; and to (b) make it clear that except as set forth in the Original Award, no further payments or obligations of any kind are required of Thermo.

The CannonBear Group filed a petition in district court requesting that the clarification order be vacated and the original award confirmed. The CannonBear Group argued that the arbitration panel had exceeded its authority by reconsidering the merits of the original controversy and fundamentally altering the substance of the award. The CannonBear Group also argued that by eliminating any "best efforts" obligation for future marketing of Cannon-Bear products, the panel had rewritten the

parties' original contract by granting a remedy not requested by either party. Finally, the CannonBear Group asked the court to order an independent accounting of Thermo's sales of the RCM to ensure that the CannonBear Group had been paid sufficient royalties.

Thermo moved for summary judgment on all of the CannonBear Group's claims. The trial court granted summary judgment, ruling that the arbitration panel's second order *was* a clarification order and that the panel had authority to issue it. The trial court also denied the CannonBear Group's request for an accounting, ruling that any new dispute must be settled through arbitration in accordance with the original contract's arbitration clause. The trial court incorporated both the original award and the clarification order as part of its final judgment. The CannonBear Group appeals that judgment.

## DISCUSSION

■■■ We initially note that Texas law favors the arbitration of disputes. *See Brazoria County v. Knutson*, 142 Tex. 172, 176 S.W.2d 740, 743 (1943). The award of an arbitration panel is entitled to great deference in a court of law lest disappointed litigants seek to overturn every unfavorable arbitration award in court.[4] *See Bailey & Williams v. Westfall*, 727 S.W.2d 86, 90 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). Accordingly, every reasonable presumption will be indulged to uphold the arbitration proceeding. *J.J. Gregory Gourmet Servs., Inc. v. Antone's Import Co.*, 927 S.W.2d 31, 33 (Tex.App.—Houston [1st Dist.] 1995, no writ).

### The Clarification Order

Arbitrators may modify or correct an award to clarify the award. Tex. Civ. Prac. & Rem.Code Ann. § 171.054(a)(2) (West Supp.1999). The CannonBear

---

4. Appellant argues that because it is the clarification order and not the original award which is the subject of this appeal, it is due no deference and should be reviewed *de novo*. This interpretation, however, would create a loophole and allow relitigation by disappointed parties of unfavorable arbitration awards, as evidenced by this case.

Group attacks the clarification order of the arbitration panel from two perspectives, arguing that the clarification order must be vacated because: (1) it actually changed the nature of the original award rather than merely clarifying it; and (2) it awarded relief not requested by either party.

■ The CannonBear Group first contends that the arbitrators in this case exceeded their authority to clarify the original award by altering the parties' substantive rights in the clarification order. The CannonBear Group argues that the *only* logical interpretation of the panel's original award is that Thermo continued to be obligated to use its best efforts in developing and marketing the CannonBear products. They further argue that because royalties are a measure of damages for Thermo's failure to use its best efforts, the arbitration panel's order that Thermo continue to pay "royalties payable under the contracts" indicates the arbitrators believed that future damages had not yet accrued. The argument continues that an obligation to continue to pay royalties under the contract necessarily carries with it an obligation to use best efforts in acquiring those royalties.

Thus, the CannonBear Group contends that given its interpretation of the original award that Thermo retained an obligation to use its best efforts, the arbitration panel impermissibly modified the award in the clarification order by eliminating Thermo's obligation to use its best efforts. As a result, the arbitration panel exceeded the scope of a permissive clarification as established by section 171.054(a)(2), and the clarification order should be vacated.

Thermo responds, and the trial court agreed, that the original award compensated the CannonBear Group not only for past royalties on CannonBear products and their derivatives and for the past breach of the "best efforts" clause, but also for an anticipatory breach of the "best efforts" clause attributable to future conduct. Thermo argues that the clarification order merely restates the substance of the award in clear, unequivocal language. Under this interpretation, the clause "all royalties payable under the contracts" contained in the original order refers only to the remaining obligation of Thermo to pay royalties on any sale of existing Cannon-Bear products and the GMS product; it does not impose a continuing requirement to use its "best efforts." In refusing to vacate the clarification order, the trial court remarked on the logical basis for the award; given the fact that new technology had already overtaken the technology characteristic of the CannonBear products, it would have made little sense to require Thermo to use its best efforts to market dated technology, especially when the contract termination date was fast approaching.

■ Of course, the best source to determine the intention of the original award remains the arbitration panel itself. And, we must accord great deference to the arbitration panel and indulge every reasonable presumption in its favor. Even assuming the CannonBear Group's interpretation is reasonable, it is certainly not the *only* reasonable interpretation. The existence of this suit implies that some clarification may have been necessary, and the arbitration panel issued a self-styled "clarification" order which was not clearly inconsistent with its original award. The panel clarified that the original award covered the CannonBear Group's past and future damages for Thermo's failure to use its best efforts. Nothing in the record gives us reason to believe that the panel in fact modified the original award and disguised it as a clarification. We hold that the clarification order merely restated the intention of the original award and was not an impermissible modification.

■ The CannonBear Group next argues that by ordering Thermo to continue paying royalties while eliminating Thermo's obligation to use its best efforts, the panel partially rescinded and reformed the

parties' original contract, and thereby abused its authority because such a remedy was not requested by either party. The CannonBear Group cites to this Court a line of cases that it contends stands for the proposition that an arbitration panel may only award relief specifically asked for by the parties, otherwise the award is void as to such matters. *See Gulf Oil Corp. v. Guidry*, 160 Tex. 139, 327 S.W.2d 406, 408 (1959) ("the authority of arbitrators is derived from the arbitration agreement and is limited to a decision of the matters submitted therein either expressly or by necessary implication."); *see also City of Baytown v. C.L. Winter, Inc.*, 886 S.W.2d 515, 518 (Tex.App.—Houston [1st Dist.] 1994, writ denied).

*Guidry* involved an arbitration dispute over the alleged discriminatory dismissal of a Gulf Oil union employee. The sole issue submitted to arbitration was whether Gulf Oil's discharge of Guidry was for "cause" within the meaning of the union contract. *Guidry*, 327 S.W.2d at 407. The arbitrator's award found that the discharge was discriminatory, but went on to order Guidry demoted and award backpay to Guidry calculated at the rate for the demoted position. *Id.* The supreme court vacated those provisions of the award that demoted Guidry and awarded backpay, stating: "[W]hen arbitrators attempt to determine matters not submitted to their determination, as to such matters the award is void." *Id.* at 408.

We read the holding of *Guidry* and its progeny more narrowly than does the CannonBear Group. *Guidry* allows arbitrators to award relief only where such relief is an issue to be determined. It does not restrict the scope of an arbitrator's authority to craft an award to the specific relief requested by the parties. In fact, arbitrators have traditionally enjoyed broad leeway to fashion remedies. *See Anderman/Smith Operating Co. v. Tennessee Gas Pipeline Co.*, 918 F.2d 1215, 1219 (5th Cir.1990). In the present case, the CannonBear Group asked the arbitration panel

to find a breach of contract, which the panel found. The CannonBear Group also asked for damages commensurate with that breach, which the panel awarded. Unlike *Guidry*, the arbitration panel in this case did not attempt to determine matters not submitted for its determination; the panel here clearly had the authority to fashion a remedy for the breach of the contractual requirement that Thermo use its "best efforts."

Furthermore, we do not agree that the arbitration panel only partially rescinded or rewrote the parties' original contract; rather, the panel rescinded the contract due to Thermo's breach, but incorporated many of the contractual terms in awarding its remedy. After determining that Thermo had breached its contractual obligation to use its "best efforts," the panel awarded damages as follows: $4,000,000 plus past and future royalties on the RCM plus any future royalties on the CannonBear products *without Thermos's best efforts.* The panel recognized that the circumstances would not allow for the parties to be placed in their same contractual stances as before the breach; not only had Thermo attempted to circumvent the contract with its own product, the RCM, but the overall technology in the industry had changed. Thus, the panel awarded damages for breaching the "best efforts" clause with a lump sum payment, but incorporated the existing contractual terms into its award regarding the payment of royalties. It fashioned a judgment that remedied those wrongs that could no longer be reasonably governed by the original contract and incorporated the contractual terms for those areas that still fit. We hold that the arbitration panel was within its authority to fashion the remedy as it did. Having rejected the CannonBear Group's two theories for vacating the trial court's judgment, we overrule its first point of error.

### Accounting for Sales of the RCM

In its second point of error, the CannonBear Group argues that the trial court should have ordered an independent ac-

counting of Thermo's sales of the RCM as a part of the court's confirmation of the original arbitration award. In accordance with the original award, Thermo paid the CannonBear Group $132,997.20 for royalties on past sales of the RCM. However, the CannonBear Group contends that this amount was incorrect and asked the trial court to order an independent accounting of Thermo's sales of the RCM. The trial court denied the request, holding that the dispute must be arbitrated in accordance with the contract arbitration clause.

■ The original contract's arbitration clause provided for arbitration for any "controversy or claim arising out of, or relating to the agreement." The Cannon-Bear Group's contention that Thermo undervalued its past sales of the RCM and therefore an independent accounting was necessary to determine the correct royalty payment clearly falls within the confines of the contract arbitration clause. Because this claim was first presented to the trial court, the trial court correctly held that the request for an accounting was premature because the dispute must first be submitted to arbitration. CannonBear Group's second point of error is overruled.

## CONCLUSION

The trial court did not err in finding that the arbitration panel's clarification order merely restated the intent of the original order and was not an impermissible modification. Moreover, the trial court did not err in finding that the arbitration panel had the authority to award damages for both past and anticipatory breaches of the "best efforts" clause and also to order continued royalty payments according to the original contractual terms. Finally, because the CannonBear Group's claim for an independent accounting of RCM sales had not yet been submitted to arbitration, the trial court correctly found the request to be premature. Having overruled all points of error, we affirm the judgment of the trial court.