Robert L. MYER and Strider Marketing Group, Inc., Appellants,

v.

AMERICO LIFE, INC., Americo Financial Life and Insurance Annuity Company, Great Southern Life Insurance Company, The Ohio State Life Insurance Company, and National Farmer's Union Life Insurance Company, Appellees.

No. 05–08–01053–CV.

Court of Appeals of Texas, Dallas.

June 6, 2012.

Rehearing Overruled Aug. 7, 2012.

D. Douglas Brothers, Craig T. Enoch, Enoch Kever, PLLC, Peter E. Ferraro, The Ferraro Law Firm, P.C., Austin, TX, for Appellants.

Mike A. Hatchell, Locke Lord Bissel & Liddell LLP, John K. Schwartz, Barbara M. Ellis, Susan Kidwell, Austin, TX, Edwin R. DeYoung, Roger B. Cowie, Locke Liddell & Sapp, LLP, Dallas, TX, for Appellees.

Before Justices MOSELEY, O'NEILL, and MURPHY.

## OPINION ON REMAND

Opinion By Justice O'NEILL.

Appellants Robert L. Myer and Strider Marketing Group, Inc. (collectively referred to as appellants) and Americo Life, Inc., Americo Financial Life and Insurance Annuity Company, Great Southern Life Insurance Company, The Ohio State Life Insurance Company, and National Farmer's Union Life Insurance Company (collectively referred to as appellees) partici-

pated in arbitration. Appellants filed a petition with the district court to confirm the award, and appellees filed a motion to vacate and/or modify the award. The trial court denied appellants' motion to confirm the award and granted appellees' motion to vacate.

In our original opinion, we concluded appellees failed to preserve their issue for review regarding whether the arbitration panel was appointed under the method provided for in the arbitration agreement. We reversed and remanded for further proceedings.

The Texas Supreme Court reversed our decision because it concluded the record demonstrated appellees had properly presented their argument to the American Arbitration Association (AAA) and remanded the case back to this Court for further proceedings.[1]

Accordingly, we shall address the following arguments raised by appellants: (1) whether the trial court ignored rules of contract construction regarding whether the parties' arbitration agreement was ambiguous (2) whether an arbitrator can be disqualified by the AAA and (3) whether each of appellees' remaining challenges fail as a matter of law. We reverse and remand for further proceedings consistent with this opinion.

## Background

The parties acknowledge the facts are generally undisputed; therefore, we will discuss only those facts relevant to the arguments on appeal, rather than detailing the business dealings leading up to the arbitration.

Appellant Myer built a business platform for the sale and servicing of tax-sheltered insurance products. Myer sold the insurance companies to appellees in

1998. Appellees were unwilling to pay the full value up front, so the parties agreed to use "trailer agreements" as a financing mechanism. The parties entered into a new trailer agreement in October 1998, which contained the following arbitration clause:

3.3 Arbitration. In the event of any dispute arising after the date of this Agreement among the parties hereto with reference to any transaction contemplated by this Agreement the same shall be referred to three arbitrators. Americo shall appoint one arbitrator and Myer shall appoint one arbitrator and such two arbitrators shall select a third.... Each arbitrator shall be a knowledgeable, independent businessperson or professional.

. . .

The arbitration proceedings shall be conducted in accordance with the commercial arbitration rules of the American Arbitration Association, except that Americo and Meyer each shall be entitled to take discovery as provided under Federal Rules of Civil Procedure Nos. 28 through 36 during a period of 90 days after the final arbitrator is appointed....

Several controversies arose between the parties and in February of 2005, appellees filed a Demand for Arbitration and Complaint in Arbitration with the AAA. Appellees appointed Ernest E. Figari, Jr. as an arbitrator, and appellants appointed Rodney D. Moore. Appellants filed an objection to Figari under AAA Rule R–17, which required that "any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and good faith." In March of 2005, a AAA case manager issued a decision disqualify-

1. *Americo Life, Inc. v. Myer,* 356 S.W.3d 496 (Tex.2011).

ing and removing Figari as arbitrator. Appellees then appointed, without objection, Richard A. Sayles as an arbitrator. The two arbitrators then selected a third arbitrator.

The arbitration commenced on March 27, 2007 and a final award was rendered on June 29, 2007. The arbitrators reached a 3–0 decision in appellants' favor and awarded declaratory relief, $9.29 million in breach of contract damages, $15.8 million in damages for amounts wrongfully withheld under the new trailer agreement, and $1.29 million in attorneys' fees and costs.

On July 9, 2008, appellants filed a petition to confirm the arbitration award in the district court. Appellees later filed a motion to vacate and/or modify the arbitration award. They argued the award was not by arbitrators appointed under the method required in the agreement, and the panel exceeded its authority. On July 15, 2008, the trial court denied the motion to confirm and granted appellees' motion to vacate the arbitration award. In its conclusions of law, it stated the AAA failed to follow the arbitration selection method contained in the first paragraph of section 3.3 of the new trailer agreement by not allowing appellees to appoint Figari, and because the award was not issued by a properly appointed and authorized panel, it was void and had no binding effect. The trial court did not consider appellees remaining grounds for vacating the award because it concluded any remaining arguments were moot.

Appellants filed a motion to reconsider. The trial court denied the motion on September 8, 2008. This appeal followed.

### Standard of Review

A review of a trial court's decision to confirm or vacate an arbitration award is de novo; therefore, we review the entire record. *Statewide Remodeling, Inc.*

*v. Williams,* 244 S.W.3d 564, 566 (Tex. App.-Dallas 2008, no pet.). However, all reasonable presumptions are indulged in favor of the award and none against it. *Id.* (citing *CVN Group, Inc. v. Delgado,* 95 S.W.3d 234, 238 (Tex.2002)). An arbitration award has the same effect as a judgment of a court of last resort, and a court reviewing the award may not substitute its judgment for that of the arbitrators merely because it would have reached a different decision. *Williams,* 244 S.W.3d at 566. Arbitration awards are entitled to great deference by the courts "lest disappointed litigants seek to overturn every unfavorable arbitration award in court." *Id.* (citing *Daniewicz v. Thermo Instrument Sys., Inc.,* 992 S.W.2d 713, 716 (Tex.App.-Austin 1999, pet. denied)).

Judicial review of arbitration awards adds expense and delay, thereby diminishing the benefits of arbitration as an efficient, economical system for resolving disputes. *Id.* Therefore, review of an arbitration award is quite narrow. *Id.* Review is so limited that an arbitration award may not be vacated even if there is a mistake of fact or law. *Crossmark, Inc. v. Hazar,* 124 S.W.3d 422, 429 (Tex.App.-Dallas 2004, pet. denied). Because of the deference given to arbitration awards, judicial scrutiny focuses on the integrity of the process, not the propriety of the result. *Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc.,* 294 S.W.3d 818, 826 (Tex.App.-Dallas 2009, no pet.). When as here, a non-prevailing party seeks to vacate an arbitration award, it bears the burden in the trial court of bringing forth a complete record that establishes its basis for vacating the award. *Williams,* 244 S.W.3d at 566.

It is undisputed the Federal Arbitration Act ("FAA") applies to this case. Under the FAA, an arbitration award must be

confirmed unless it is vacated, modified, or corrected under one of the limited grounds set forth in sections 10 and 11 of the Act. *See* 9 U.S.C. §§ 9–11. Section 10(a) permits a court to vacate an arbitration award (1) where the award was procured by fraud, corruption, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence material and pertinent to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their power, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. *Id.* § 10(a).

Although courts have recognized certain common law exceptions for vacating an arbitration award, the United States Supreme Court has held the grounds listed in the statute are the exclusive grounds for vacating an arbitration award under the FAA. *Hall St. Assocs., LLC v. Mattel, Inc.,* 552 U.S. 576, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008).

## Discussion

Appellants argue the trial court erred by concluding the arbitration agreement is ambiguous and determining the parties agreed to its own procedures for appointing arbitrators thereby eliminating the procedures under the AAA for selecting arbitrators. The paragraphs at issue in the arbitration agreement are as follows:

3.3 Arbitration. In the event of any dispute arising after the date of this Agreement among the parties hereto with reference to any transaction contemplated by this Agreement the same shall be referred to three arbitrators. Americo shall appoint one arbitrator and Myer shall appoint one arbitrator and such two arbitrators shall select a third.... Each arbitrator shall be a knowledgeable, independent businessperson or professional.

. . .

The arbitration proceedings shall be conducted in accordance with the commercial arbitration rules of the American Arbitration Association, except that Americo and Meyer each shall be entitle to take discovery as provided under Federal Rules of Civil Procedure Nos. 28 through 36 during a period of 90 days after the final arbitrator is appointed....

Appellants argue these two provisions are not ambiguous because they are not susceptible to more than one reasonable interpretation. Reading the two provisions together, appellants assert the parties were required to select an arbitrator that met the requirements of both paragraph one and the AAA rules. Appellees contend the parties agreed in the first paragraph to a specific selection process not governed by the AAA, and reference to the AAA in the following paragraph refers only to the procedures the parties would use *during* arbitration and not to the *selection* of the arbitrators themselves. Thus, when faced with two reasonable interpretations of the agreement, appellees claim the trial court correctly concluded an ambiguity existed and correctly determined the parties established their own procedures for choosing arbitrators that did not require following the AAA.

■ We first acknowledge that neither party argued ambiguity to the trial court. In fact, appellees specifically argued in their first amended answer and motion to vacate or modify arbitration award that "The Agreement provides that each party

shall select its own arbitrator. Disregarding this *plain and unambiguous language,* the AAA refused to allow Americo's selected arbitrator to serve despite Americo's timely objection." [Emphasis added.] However, the issue of ambiguity can be raised sua sponte by the trial court. *See Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n,* 205 S.W.3d 46, 56 (Tex.App.-Dallas 2006, pet. denied) (a court may conclude a contract is ambiguous even in the absence of such pleading by either party); *see also Sage St. Assocs. v. Northdale Const. Co.,* 863 S.W.2d 438, 445 (Tex.1993). Thus, we shall begin our analysis with whether the trial court properly concluded an ambiguity exists in the arbitration agreement.

■■■ Whether a contractual ambiguity exists is a question of law. *In re D. Wilson Const. Co.,* 196 S.W.3d 774, 781 (Tex.2006). If a contract is ambiguous, a fact issue exists as to the parties' intent. *Affiliated Pathologists, P.A. v. McKee,* 261 S.W.3d 874, 879 (Tex.App.-Dallas 2008, no pet.). In determining whether a contract is ambiguous, we look to the contract as a whole, in light of the circumstances present when the contract was executed. *Id.* A contract is ambiguous only if it is subject to "two or more reasonable interpretations after applying the pertinent rules of construction." *In re D. Wilson Constr. Co.,* 196 S.W.3d at 781. If a contract is not ambiguous, it will be enforced as written, and parol evidence will not be admitted for the purpose of creating an ambiguity or to give the contract a different meaning from that which its language imports. *McKee,* 261 S.W.3d at 879. Inartful drafting does not alone render a contractual provision ambiguous. *Id.* Moreover, ambiguity does not exist merely because the parties assert

forceful and diametrically opposing interpretations. *Id.*

■■■ Courts must be particularly wary of isolating from its surroundings or considering apart from other provisions a single phrase, sentence, or section of a contract. *See State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 433 (Tex.1995). Further, the parties to a contract generally intend every clause to have some effect, and the court will not strike down any portion of the contract unless there is an irreconcilable conflict. *Ogden v. Dickinson State Bank,* 662 S.W.2d 330, 332 (Tex. 1983) (op. on reh'g).

■■■ We agree with appellants that the two provisions involving selection of the arbitrators can be read together and harmonized to avoid any irreconcilable conflict. Under the first sentence of section 3.3 of the agreement, an arbitrator must be "a knowledgeable, independent businessperson or professional." At the time the parties demanded arbitration in 2005, AAA Rules R–12(b) and R–17(a) applied.[2] Rule R–12(b) states that when parties have agreed that each party is to name an arbitrator, the arbitrator must meet the standards of R–17 with respect to impartiality and independence unless the parties have specifically agreed that the party-appointed arbitrators are to be non-neutral and need not meet the standards. AAA Rule R–12(b). Rule R–17(a) states the following:

(a) Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for

(i) partiality or lack of independence,

---

**2.** There is no dispute that the AAA rules, as amended and effective July 1, 2003, are applicable.

(ii) inability or refusal to perform his or her duties with diligence and in good faith, and

(iii) any other groups for disqualification provided by applicable law.

AAA Rule R–17(a). Thus, reading these provisions together, the parties were required to select a knowledgeable, independent businessperson or professional who is impartial, independent, and shall perform his duties with diligence and in good faith. While Rule R–17(a) adds the additional requirement of impartiality for arbitrators, this does not create a conflict between the paragraphs.

Appellees argue the parties intentionally chose the "distinct concept" of independence over impartial and that the sentence explaining that the "arbitration proceedings shall be conducted in accordance with the commercial arbitration rules of the American Arbitration Association" means the AAA would apply after the arbitration panel was in place. Appellants respond that appellees' strained rationalization, that "independent" does not mean independent and "proceedings" does not mean proceedings, is unreasonable. We agree with appellants.

Appellees have cited a partial definition of "independent" to support their conclusion that independent and impartial are not synonymous.[3] Websters Third New International Dictionary provides the following relevant definitions of "independent": "(1)(a)(1) not subject to control by others; ... (b)(2) being or acting free of the influence of something; (b)(3) not biased by others; acting or thinking freely." WEBSTER'S THIRD NEW INT'L DICTIONARY

1148 (1981). It defines "impartial" as "not partial; not favoring one more than other; treating all alike; unbiased." *Id.* at 1131. Both definitions include the concept of being unbiased. As such, this supports appellants argument that the two words are synonymous and do not create an irreconcilable conflict within the agreement.

We likewise agree that appellees' argument that the AAA only applied to proceedings after the arbitrators were empaneled is an unreasonable interpretation. Black's Law Dictionary defines "proceeding" as follows:

1. The regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment. 2. Any procedural means for seeking redress from a tribunal or agency. 3. An act or step that is part of a larger action. 4. The business conducted by a court or other official body.

BLACK'S LAW DICTIONARY 1221 (7th ed. 1999). We agree with appellants that had the parties intended for the AAA rules to govern only the "proceedings" after they selected arbitrators, they could have included such language in the arbitration agreement. In fact, they excepted discovery proceedings from the control of the AAA rules indicating their willingness to depart from the AAA rules. However, based on the definition of "proceeding," we conclude the selection of arbitrators falls within the meaning of "any procedural means for seeking redress from a tribunal," "an act or step" part of the larger arbitration process, and "business conducted by ... an official body."[4] Thus, the

---

3. Appellees cite the following definition of independent: "not subject to control by others: not subordinate ... not affiliated with or integrated into a larger controlling unit (as a business unit)." WEBSTER'S THIRD NEW INT'L DICTIONARY 1253 (1986).

4. The trial court found the language was intended to cover the arbitration proceedings themselves (such as the procurement of discovery, taking of evidence, procedures at hearings, etc.) but not the selection of the arbitration panel, *"which is something that*

trial court erred in its conclusion that the language in the arbitration agreement is ambiguous and subject to more than one reasonable interpretation.

 In reaching this conclusion, we reject appellees' invitation to consider the "industry norms" at the time the parties entered into the agreement. "If the contract language is not fairly susceptible of more than one legal meaning or construction, however, extrinsic evidence is inadmissible to contradict or vary the meaning of the explicit language of the parties' written agreement." *See Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 521 (Tex.1995). Thus, while the contractual provisions may have been inartfully written and the parties have diametrically opposing interpretations, this does not create an ambiguity. The parties agreed any arbitrator that failed to meet the standards of impartiality and independence was subject to disqualification under the AAA rules.

 With this contract interpretation in mind, we now turn to whether the trial court erred by vacating the arbitration award because it was not issued by a properly appointed and authorized arbitration panel. The AAA rules provide that the AAA will decide whether an arbitrator is disqualified under its rules and the disqualification decision "shall be conclusive." AAA Rule R–19; *see also Roehrs v. FSI Holdings, Inc.*, 246 S.W.3d 796, 808 (Tex. App.-Dallas 2008, pet. denied). An arbitral body's interpretation of its own rules must be given substantial deference. *Roehrs*, 246 S.W.3d at 808. This court has stated that "vacatur based on a procedural error requires, at the very least, a showing that the AAA manifestly disregarded its own rules." *Id.* at 809.

necessarily takes place before the arbitration

We cannot conclude that the evidence establishes that the AAA manifestly disregarded its own rules as to permit vacatur of the award. As discussed below, the sufficiency of appellants' objection to Figari was a procedural matter for the AAA to decide. AAA Rule R–19; *see also Roehrs*, 246 S.W.3d at 809. Moreover, the AAA's decision on the merits of appellants' objection to Figari was not so irrational that we may substitute our judgment for the AAA's.

On March 15, 2005, appellants filed a written objection with the AAA arguing that Figari's designation violated AAA Rule R–17 because the parties had not agreed to the appointment of a non-neutral arbitrator. They argued that Figari "is currently acting, as a non-neutral arbitrator on behalf of Americo Life, Inc. in two arbitrations between Americo Life, Inc. and Robert L. Myer involving the same purchase transaction at issue in the above-referenced arbitration." They further stated that the first of those two arbitrations resulted in an award in which Figari dissented in favor of appellees.

In response, appellees filed a letter on March 22, 2005 stating Figari had served as a neutral arbitrator in the previous proceedings and that "Under AAA rules, Mr. Figari is qualified to serve on the panel in this proceeding." The letter also provided that "there is no evidence that Mr. Figari does not meet all the requirements of Rule–17(a)." Not until the end of the response letter did appellees state "an argument can be made that the AAA rules do not govern the selection of and qualifications of the arbitrators in this proceeding." Thus, the main focus of their response letter was that Figari was in fact neutral and qualified under AAA Rule R–17(a).

proceedings."

The AAA determined otherwise and disqualified Figari. Not until after he was disqualified did appellees strongly urge their argument that the parties did not agree for the AAA to govern the selection of arbitrators. Appellees, however, proceeded over objection, to replace Figari with Sayles and continued with the arbitration.

While appellees did not get their first choice in arbitrators, nothing in the record indicates the selection process violated the parties' agreement. Appellants complained Figari was serving as a non-neutral arbitrator in other proceedings. In one of those proceedings, Figari dissented in favor of appellees. Thus, we cannot say the AAA's decision to disqualify Figari under its "partiality or lack of independence" standard constitutes a manifest disregard for its own rules.

Because we have concluded the AAA did not disregard its own rules during the selection of the arbitration panel, the trial court erred by vacating the arbitration award on this basis.[5] We sustain appellants' first issue. Because the trial court expressly stated in its findings of fact and conclusions of law that "because the Court has found that the Award is void and has no binding effect, the remaining grounds raised by Defendants for vacating the Award are moot and, therefore, the Court has not reached them," we likewise reject the parties' invitation to consider them.

### Conclusion

We reverse and remand to the trial court for further proceedings.

---

**5.** The trial court concluded vacatur was appropriate because the award "was not issued by a properly appointed and authorized arbitration panel."