ACCEPTED
04-14-00657-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
1/14/2015 5:25:54 PM
KEITH HOTTLE
CLERK

## NO. 04-14-00657-CV

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
01/14/2015 5:25:54 PM
KEITH E. HOTTLE
Clerk

**IN THE COURT OF APPEALS
FOURTH COURT OF APPEALS DISTRICT OF TEXAS
SAN ANTONIO, TEXAS**

**RICHARD LESHIN, SUCCESSOR TRUSTEE
OF THE DAVILA FAMILY TRUST, TRUST A,**

**APPELLANT**

**VS.**

**JUAN GERARDO OLIVA, INDIVIDUALLY, AND
ROSINA OLIVA, INDIVIDUALLY AND AS
SUCCESSOR TRUSTEE OF THE DAVILA FAMILY TRUST,
TRUSTS B, C AND D,**

**APPELLEES**

*From the 406th Judicial District Court, Webb County, Texas
Cause No. 2008-CVF-000855-D4
Honorable Oscar J. Hale, Jr., Judge Presiding*

**BRIEF OF APPELLEE
JUAN GERARDO OLIVA**

_____

Respectfully submitted,

David C. "Clay" Snell
State Bar No. 24011309
BAYNE, SNELL & KRAUSE
1250 N.E. Loop 410, Suite 725
San Antonio, Texas   78209
Telephone: (210) 824-3278
Telecopier: (210) 824-3937

***ORAL ARGUMENT REQUESTED***        ATTORNEY FOR APPELLEE

## **Request for Oral Argument**

Juan Gerardo Oliva ("Oliva") requests the opportunity to present oral argument in this proceeding. Oliva believes oral argument will assist the court in resolving this matter because the factual history of this case is relatively complex.

## Table of Contents

Request for Oral Argument ………………………………………………………………………..ii

Table of Authorities …………………………………………………………………………….iv

Statement of the Case…………………………………………………………………………….1

Issues Presented…………………………………………………………………………………3

Response to Leshin's Statement of Facts ……………………………………………………….4

Summary of the Argument……………………………………………………………………….4

Argument ………………………………………………………………………………………..5

I.      The trial court was correct in confirming the arbitrator's
        award because Leshin failed to come forth with a complete
        record that establishes his basis for vacating the award.…………………………5

II.     Leshin cannot show with "positive assurance" that the
        arbitrator exceeded his powers because the arbitration
        agreement and the AAA rules for arbitration vest the
        arbitrator with the authority to decide his jurisdiction
        and arbitrability of claims………………………………………………………….6

III.    Even if this court were permitted to review the arbitrator's
        rulings as to Leshin's individual liability, the record
        establishes that Leshin was properly before the arbitrator
        for all purposes.……………………………………………………………………..9

        A.      The documents in the record clearly establish that Leshin
                agreed to arbitrate all  claims against him, regardless of the
                capacity in which he is sued …………………………………………10

        B.      The record demonstrates that Leshin was properly before
                the arbitrator ………………………………………………………………11

IV.     Should the Court conclude that Leshin is not individually liable,
        he should be liable as Trustee for all amounts awarded to Oliva.………………15

Prayer for Relief…………………………………………………………………..16

Certificate of Service …………………………………………………………..18

# Table of Authorities

**Cases**

*Agere Systems, Inc. v. Samsung Electronics Company, Ltd.*,
   560 F.3d 337, 339 (5th Cir. 2009) ...................................................................... 8

*American Realty Trust, Inc. v. JDN Real Estate-McKinney, LP*,
   74 S.W.3d 527, 531 (Tex. App.—Dallas 2002, pet. denied) .......................... 7

*Burlington Resources Oil & Gas Co., LP v. San Juan  Basin Royalty Trust*,
   249 S.W.3d 34, 41 (Tex. App.—Houston [1st Dist.] 2007, pet. denied .......... 8

*Centex/Vestal v. Friendship West Baptist Church*,
   314 S.W.3d 677, 684 (Tex. App.—Dallas 2010, pet. denied) ........................ 6

*Crossmark, Inc. v. Hazar*,
   124 S.W.3d 422, 429 (Tex. App.—Dallas 2004, pet. denied ......................... 5

*CVN Group, Inc. v. Delgado*,
   95 S.W.3d 234, 238 (Tex. 2002) ..................................................................... 5

*Daniewicz v. Thermo Inst. Sys., Inc.,*
   992 S.W.2d 713, 716 (Tex. App.—Austin, 1999, pet. denied) ....................... 5

*GJR Management Holdings, LP v. Jack Raus, Ltd.*,
   126 S.W.3d 257, 263 (Tex. App.—San Antonio 2003, pet. denied)............... 6

*Gulf Oil Corp. v. Guidry*,
   327 S.W.2d 406, 408 (Tex. 1959) .................................................................... 7

*Haddock v. Quinn*,
   287 S.W.3d 158, 172 (Tex. App.—Ft. Worth 2009, pet. denied ................... 8

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79, 83 (2002) .................................................................................... 8

*In re Guardianship of Cantu*,
   330 S.W.3d 11, 23 (Tex. App.—Corpus Christi 2010, no pet.) ..................... 7

*In re Merrill Lynch Trust Co. FSB*,
   235 S.W.3d 185, 188 (Tex. 2007) ................................................................. 11

*Myer v. Americo Life, Inc.*,
   232 S.W.3d 401, 408 (Tex. App.—Dallas 2007, no pet. .............................. 7

*Myer v. Americo Life, Inc.*,
   371 S.W.3d 537, 541 (Tex. App.—Dallas, pet. granted ............................... 6

*Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly*
*Operators' Warehouse Independent Truck Drivers Union, Local No. 1*,
   611 F.2d 580, 584 (5th Cir. 1980) .................................................................. 8

*Saxa, Inc. v. DFD Architecture, Inc.*,
  312 S.W.3d 224, 229-30 (Tex. App.—Dallas 2010, pet. denied) ...................................7
*Statewide Remodeling, Inc. v. Williams*,
  244 S.W.3d 564, 566 (Tex. App.—Dallas 2008, no pet.) ...............................................5
*The Ray Malooly Trust v. Juhl*,
  186 S.W.3d 568, 571 (Tex. 2006) ...............................................................................12
*United States Fidelity and Guaranty Co. v. Goudeau*,
  272 S.W.3d 603 (Tex. 2007) ......................................................................................13
*Werner v. Colwell,*
  909 S.W.2d 866, 869-70 (Tex. 1995).........................................................................12

## Statement of the Case

Oliva generally agrees with Leshin's Statement of the Case, but takes exception to several mischaracterizations of the record.  In his "Course of Proceedings," Leshin claims that "on November 1, 2013, Oliva made a claim against Richard L. Leshin, *as* Successor Trustee of the Davila Family Trust, Trust A."  However, Oliva's claim in arbitration did not have the word "as" following "Richard Leshin . . . ." and thus did not specify that Leshin was being sued in any particular capacity.

1

## Statement of Facts

Leshin omitted a number of important background facts, so Oliva provides the following statement: In August of 2000, Pioquinto Ramon Davila and his wife Guadalupe Rosalinda Davila created the Davila Family Trust. (Award, p. 3; CR 30). Pioquinto and Guadalupe were both trustees and lifetime beneficiaries. *Id.* The trust was revocable during the lifetime of both Pioquinto and Guadalupe, but became partially irrevocable on the death of the first to die. *Id.*

Guadalupe died in 2003. *Id.* Due to the way the trust was structured, the trusts were eventually divided into four separate trusts, which have come to be known as Trusts "A," "B," "C," and the "GST Trust" or "Trust D." (Award, p. 4; CR 31). Upon the death of Pioquinto, Oliva became successor trustee of Trusts B, C, and D, and Leshin became the successor trustee of Trust A. *Id.* Thereafter, Oliva resigned as successor trustee, and Rosina Oliva became the second successor trustee of Trusts B, C, and D.

Oliva is a beneficiary under Trust A. Trust A provided that Oliva was to receive all personal and household effects of Pioquinto. (Award, p. 3-4; CR 30-31). However, when Pioquinto died in 2010 Leshin failed to take possession of that property and deliver the same to Oliva. (Award, p. 4, CR 31).

Oliva brought a claim in arbitration against Leshin for his failure to provide the personal property awarded to him under Trust A. The arbitrator agreed with Oliva and entered an award that Oliva was entitled to the "immediate inventory, accounting, and distribution of all personal and household effects of Pioquinto Ramon Davila." *Id.* The award further provided that "if such property cannot be distributed to Claimant Juan

2

Gerardo Oliva, he is entitled to an award of monetary damages equal to the fair reasonable cash market value of the property not distributed to him," which value was $79,426.00. *Id.* The award further provided if Leshin distributed any personal property to Oliva within thirty days of the award, Leshin would be given a credit against the award for the value of each item delivered. (Award, p. 7; CR 34).

Leshin did not distribute any of the personal property to Oliva within thirty days of the award. (2 RR 44). Accordingly, he became liable to Oliva for $79,426.00. Under the award, Leshin is liable to Oliva "individually and as Trustee." (Award, p. 6; CR 33). In addition, the arbitrator awarded Oliva attorney's fees in the amount of $5,755.00 and expenses in the amount of $5,595.01. (Award, p. 7; CR 34).

At paragraph 8 of his Statement of Facts, Leshin states that Oliva's claim against Leshin was "*as* successor trustee . . . ." However, as set forth above, Oliva's claim in arbitration did not have the word "as" following "Richard Leshin . . . ." and thus did not specify that Leshin was being sued in any particular capacity.

## **Issues Presented**

Oliva disagrees with the manner in which Leshin has framed the issues presented on appeal. Instead, the issue in this appeal is as follows:

Issue 1:  Whether the trial court was correct in confirming the arbitrator's award when Leshin failed to present a record establishing that the arbitrator exceeded his authority and where the record shows clearly that the arbitrator was well within his power to determine that he had jurisdiction to enter an award that Leshin was individually liable

## Summary of the Argument

A party who seeks to vacate an arbitration award bears the burden in the trial court of bringing forth a complete record that establishes its basis for vacating the award. Leshin has completely failed to carry his burden because he has come forth only with a partial record. Leshin has not brought forth a record showing that he was not brought into arbitration in a manner that would render him individually liable. For this reason alone, the trial court was correct in confirming the arbitrator's award.

In any case, the matters in the record clearly establish that the arbitrator was well within his power to determine that Leshin was individually liable for his wrongful acts. The AAA Commercial Rules of Arbitration, which apply to this matter, provide that the arbitrator had the power to rule on his own jurisdiction, "including any objections with respect to the . . . scope . . . of the arbitration agreement or to the arbitrability of any claim or counterclaim."

Finally, the Texas Trust Code is clear that a trustee is always individually liable for his wrongful acts committed as trustee, so it was not necessary to sue Leshin in any particular capacity.

**Argument**

**I.     The trial court was correct in confirming the arbitrator's award because Leshin failed to come forth with a complete record that establishes his basis for vacating the award.**

While it is true that a review of a trial court's decision to confirm or vacate an arbitration award is reviewed de novo, all reasonable presumptions are indulged in favor of the award and none against it. *Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 566 (Tex. App.—Dallas 2008, no pet.) (citing *CVN Group, Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002)). An arbitrator's award has the same effect as a judgment of a court of last record, and the reviewing court may not substitute its judgment for that of the arbitrator merely because it would have reached a different decision. *Williams*, 244 S.W.3d at 566.

Arbitration awards are entitled to great deference by reviewing courts "lest disappointed litigants seek to overturn every unfavorable arbitration award in court." *Id.* (citing *Daniewicz v. Thermo Inst. Sys., Inc.,* 992 S.W.2d 713, 716 (Tex. App.—Austin, 1999, pet. denied)). Indeed, the benefits of arbitration as an efficient, economical system for resolving disputes are diminished by judicial review of arbitration awards. *Id.* Therefore, review of an arbitration award is very narrow. *Id.* Review is so limited that an arbitration award may not be vacated even if the court finds a mistake of fact or law. *Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 429 (Tex. App.—Dallas 2004, pet. denied).

When, as in this case, the losing party seeks to vacate an arbitration award, "it bears the burden in the trial court of bringing forth a complete record that establishes its basis for vacating the award." *Myer v. Americo Life, Inc.*, 371 S.W.3d 537, 541 (Tex. App.—Dallas,

6

pet. granted); *GJR Management Holdings, LP v. Jack Raus, Ltd.*, 126 S.W.3d 257, 263 (Tex. App.—San Antonio 2003, pet. denied).

In the present case, Leshin complains that he was not "served" in his individual capacity in the arbitration proceeding and did not agree, in his individual capacity, to binding arbitration. However, Leshin failed to come forth with a complete record supporting the grounds he urges for vacating the arbitrator's award. Leshin did not provide a transcript of the arbitration hearing. While his attorney introduced various documents filed in the arbitration proceeding, Leshin provided no evidence whatsoever, in the form of testimony or an affidavit, that the exhibits introduced at the hearing on his Motion to Vacate the Award constituted the *entire* record. Leshin is essentially asking this Court to assume that the remaining documents in the arbitration record, which were not introduced into evidence in the trial court, would support his argument. This Court cannot make such an assumption. *See Centex/Vestal v. Friendship West Baptist Church*, 314 S.W.3d 677, 684 (Tex. App.—Dallas 2010, pet. denied)("[W]ithout an arbitration transcript, we must presume the arbitration evidence adequately supported an award."). For this reason alone, the Court should conclude that the trial court was correct in confirming the arbitrator's award.

**II.     Leshin cannot show with "positive assurance" that the arbitrator exceeded his powers because the arbitration agreement and the AAA rules for arbitration vest the arbitrator with the authority to decide his jurisdiction and arbitrability of claims.**

Even if Leshin had somehow come forth with a complete record establishing that he was not properly "served" or brought before the arbitrator for all purposes, his

7

arguments would still fail because the arbitrator was vested with the power to determine his jurisdiction and the arbitrability of claims.

The authority of an arbitrator to decide matters is derived from the arbitration agreement and is limited to a decision of matters expressly set forth in the agreement or by necessary implication. *In re Guardianship of Cantu*, 330 S.W.3d 11, 23 (Tex. App.—Corpus Christi 2010, no pet.)(citing *Gulf Oil Corp. v. Guidry*, 327 S.W.2d 406, 408 (Tex. 1959)). However, "when determining whether an arbitrator has exceeded his power, any doubts concerning the scope of what is arbitrable should be resolved in favor of arbitration." *Id.* (citing *Myer v. Americo Life, Inc.*, 232 S.W.3d 401, 408 (Tex. App.—Dallas 2007, no pet.)). "It is only when the arbitrator departs from the agreement and, in effect, dispenses his own idea of justice that the award may be unenforceable." *Id.* (citing *Centex/Vestal v. Friendship West Baptist Church*, 314 S.W.3d 677, 684 (Tex. App.—Dallas, no pet.). "A broad arbitration clause, purporting to cover all claims, disputes, and other matters arising out of or relating to the contract, creates a presumption of arbitrability." *Saxa, Inc. v. DFD Architecture, Inc.*, 312 S.W.3d 224, 229-30 (Tex. App.—Dallas 2010, pet. denied)(quoting *American Realty Trust, Inc. v. JDN Real Estate-McKinney, LP*, 74 S.W.3d 527, 531 (Tex. App.—Dallas 2002, pet. denied)). In determining whether an arbitrator exceeded his or her power in cases involving a broad arbitration agreement, "arbitration of a claim should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the dispute." *Centex/Vestal*, 314 S.W.3d at 685-86.

While it is true that generally the issue of whether the parties agree to arbitrate is to be decided by the court, and not the arbitrator, "an exception applies in cases where the parties unmistakably provide for the arbitrator to decide." *Agere Systems, Inc. v. Samsung Electronics Company, Ltd.*, 560 F.3d 337, 339 (5th Cir. 2009). Stated another way, "even the issue of arbitrability 'may be submitted to binding arbitration . . . if there has been a clear demonstration that the parties contemplated it.'" *Id.* (quoting *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local No. 1*, 611 F.2d 580, 584 (5th Cir. 1980)); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).

When the parties agree to a broad arbitration clause that specifically incorporates rules that empower an arbitrator to decide issues of arbitrability, "the incorporation serves as clear and unmistakable evidence of the parties' attempt to delegate such issues to an arbitrator." *Saxa*, 312 S.W.3d at 229-30 (citing *Haddock v. Quinn*, 287 S.W.3d 158, 172 (Tex. App.—Ft. Worth 2009, pet. denied)(holding that "the majority of courts have concluded that express incorporation of rules empowering the arbitrator to decide arbitrability (including ruling upon his or her own jurisdiction) clearly and unmistakably evidences the parties' attempt to delegate issues of arbitrability to the arbitrator.")); *Burlington Resources Oil & Gas Co., LP v. San Juan Basin Royalty Trust*, 249 S.W.3d 34, 41 (Tex. App.—Houston [1st Dist.] 2007, pet. denied)("We are also mindful that, in certain circumstances, the incorporation of AAA rules may constitute clear and unmistakable evidence of an intent to allow an arbitrator to decide issues of arbitrability.").

9

As set forth in Leshin's Brief, the arbitration agreement at issue in this case is very broad and specifically incorporates the rules of the American Arbitration Association. (CR 56-57; Brief of Appellant, p. 20). The Commercial Arbitration Rules of the American Arbitration Association, in turn, vest the arbitrator with the power to decide arbitrability of claims and his own jurisdiction. Rule R-7, entitled "Jurisdiction," provides as follows:

> (a) The arbitrator shall have the power to rule on his or her own jurisdiction, including objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

> (b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part . . .

Brief of Appellant, Tab 3, p. 13.

Given that the arbitration provision in the Trust provides the arbitration is to be governed by the AAA Commercial Arbitration Rules, and given that the AAA Arbitration Rules vest the arbitrator with the ability to decide issues of arbitrability and jurisdiction, the arbitrator alone had the power to determine whether Leshin was properly served in the arbitration proceeding and whether the award was proper. The trial court did not even have the power to rule on whether the claims referenced in the arbitrator's award were arbitrable or whether the arbitrator had jurisdiction to enter judgment on these claims. Therefore, the trial court was correct in confirming the arbitrator's award.

10

**III.** **Even if this court were permitted to review the arbitrator's rulings as to Leshin's individual liability, the record establishes that Leshin was properly before the arbitrator for all purposes.**

Even though Leshin has wholly failed to carry his burden of coming forth with a record to establish that the arbitrator exceeded his authority, the documents Leshin did place into the record clearly establish that the arbitrator was well within his authority to render the award in question.

**A.** *The documents in the record clearly establish that Leshin agreed to arbitrate all claims against him, regardless of the capacity in which he is sued.*

Leshin's argument that he is not a party to the arbitration agreement in his "individual capacity" ignores the plain language of the Trust. The Trust provides that "***any controversy*** between the Trustee and any other parties to this Trust, including Beneficiaries,…shall . . . be submitted to arbitration." (CR 56-57; Brief of Appellant, p. 20 (emphasis added)). The words "any controversy" necessarily mean that any claim against the trustee is subject to arbitration, regardless of the capacity in which the Trustee sued. If the settlors of the Trust intended that only claims against the Trustee in his capacity as Trustee be submitted to binding arbitration, they would not have used the words "any controversy."

It is undisputed that Leshin is the Trustee and Oliva is a beneficiary. By agreeing to serve as Trustee, Leshin accepted the benefits and obligations of the Trust instrument, including the obligation to submit claims to arbitration. Therefore, Leshin agreed to submit all claims to arbitration, regardless of whether the claims are against him in his individual

11

capacity or his capacity as trustee. The trial court was entirely correct in rejecting Leshin's argument that the award should be vacated due to the lack of an agreement to arbitrate.

Indeed, if the roles were reversed, and Oliva was attempting to bring his claims against Leshin in district court, Oliva would not be able to avoid application of the arbitration agreement by suing Leshin in his individual capacity. "Parties to an arbitration agreement may not evade arbitration through artful pleading, such as by naming individual agents of the party to the arbitration clause and suing them in their individual capacity." *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 188 (Tex. 2007).

Finally, the arbitrator had the power to decide whether Leshin agreed to arbitrate. As stated above, when the arbitration clause specifically incorporates rules that empower an arbitrator to decide issues of arbitrability, "the incorporation serves as clear and unmistakable evidence of the parties' attempt to delegate such issues to an arbitrator." *Saxa*, 312 S.W.3d at 229-30. The AAA rules, which are incorporated into the Trust's arbitration provision, provide that the arbitrator is vested with the power to decide whether Leshin is bound by the arbitration provision in all capacities.

### B. *The record demonstrates that Leshin was properly before the arbitrator.*

To support his argument that the arbitrator could not rule that Leshin was individually liable to Oliva, Leshin cites a number of cases which hold that a court may not exercise jurisdiction over a party unless they have been served with process. However, all of the cases Leshin cites in support of this proposition deal with the Texas Rules of Civil Procedure. In this arbitration proceeding, the AAA Commercial Rules for Arbitration apply, not the Texas Rules of Civil Procedure.

12

As Leshin points out in his Brief, the AAA Rules for Commercial Arbitration do not require that a party be served with formal citation as is required in the Texas Rules of Civil Procedure. The AAA rules provide that an arbitration is initiated simply by the filing of a "Demand for Arbitration." *See* AAA Commercial Rules, R-4(a); Brief of Appellant, Tab 3, p. 11. As to the particular form of the Demand, the rules provide only that any filing with the AAA include the "name of each party" and "the address for each party, . . ." AAA Commercial Rules, R-4(e). The AAA rules do not require that the initiating party set forth the specific capacity in which the other parties are being sued. Therefore, by addressing their claim to "Richard Leshin, Trustee . . ." Oliva clearly complied with the rules of the American Arbitration Association for identifying parties. Leshin cannot complain that he was not properly brought before the AAA in his individual capacity.

As discussed at Part I, Leshin's failure to supply this court a complete record of the arbitration proceedings prevents this court from even considering this issue. Even if this court were to conclude that Oliva did not comply with the AAA rules in notifying Leshin that he was being sued in his individual capacity, the inquiry would not end here. Only by providing the court with a complete record of the proceedings could Leshin establish that he was not properly before the arbitrator, as there are numerous ways in which a tribunal can exercise jurisdiction over a party even if they are not properly served. For example, arguments that a person has not been properly joined in a particular capacity can be waived. *The Ray Malooly Trust v. Juhl*, 186 S.W.3d 568, 571 (Tex. 2006)(holding that trustee waived any objection that judgment had to be rendered against the trust, as opposed to trustee individually, because he failed to raise a timely objection to capacity). Indeed, the

13

AAA rules specifically required Leshin to raise any objection to the arbitrator's jurisdiction or the arbitrability of claims with the arbitrator. AAA Commercial Rule R-7(c). Leshin did not provide any evidence that these objections were raised with the arbitrator.

In addition, Leshin could have waived any argument about capacity by entering a general appearance in the arbitration matter. *Werner v. Colwell,* 909 S.W.2d 866, 869-70 (Tex. 1995)(noting that a party can waive service as to a particular capacity by making a general appearance before the court). Only be reviewing a complete record of the proceedings could this court determine whether there might be other reasons for the arbitrator to determine that he could rule that Leshin was individually liable, even if there were some defect in the manner in which Leshin was served.

Furthermore, as discussed previously, it was for the arbitrator, and not the court, to decide whether an award against Leshin in his individual capacity was appropriate. The AAA rules specifically vested the arbitrator with the authority of determining whether the scope of the arbitration agreement included claims that would result in Leshin's individual liability and whether he had jurisdiction to enter the award. *See* AAA Commercial Rules, R-7(a),(b).

Leshin's reliance upon *United States Fidelity and Guaranty Co. v. Goudeau*, 272 S.W.3d 603 (Tex. 2007), and *Werner v. Colwell*, 909 S.W.2d 866 (Tex. 1995), is misplaced. In *Goudeau*, the Court merely held that requests for admissions sent to the attorney for an insurance company in its capacity as intervenor on behalf of a workers' compensation carreir did not bind the insurance company in its capacity as defendant in

14

the primary claim. 272 S.W.3d at 608-09. *Goudeau* says nothing about whether an arbitrator is within his power to find a trustee individually liable for his wrongful acts.

In *Werner*, the Court held that the defendant could not be held liable in her capacity as trustee when she was sued only in her individual capacity, with no indication that the plaintiff intended to hold the trust liable. Moreover, when she testified at trial, the trustee specifically stated on the record that she was appearing only in her individual capacity, and not as trustee. 909 S.W.2d at 870. In the present case, the pleadings in arbitration clearly state that the suit concerns Leshin's service as Trustee for the Davila Family Trust. Unlike the trustee in *Werne*r, who would have had no reason to believe that the suit sought to hold the trust liable, Leshin clearly was on notice that the claims concerned his service as Trustee.

In any case, Oliva was not required to specifically state in his arbitration demand that he was seeking to hold Leshin individually liable for his actions as Trustee. Under Texas law, trustees are always personally liable for tortious actions committed in the course of their service. Tex. Prop. Code § 114.083(d).

## IV. Should the Court conclude that Leshin is not individually liable, he should be liable as Trustee for all amounts awarded to Oliva

In his Prayer, Leshin requests the Court to render judgment that he is not individually liable for the sums awarded to Oliva. However, Leshin further askes that the award be modified "so that the only recoverable damages are those which specifically refer to and specifically identify the damages as against Richard Leshin, as Successor Trustee of the Davila Family Trust, Trust A." (Brief of Appellant, p. 27-28). While the award

15

provides that the monetary damages of \$79,426.00 are awarded against Leshin "individually and as Trustee." (Award, p. 6; CR 33), it provides that the awards for attorney's fees and expenses are simply awarded against "Richard L. Leshin." (Award, p. 7; CR 34). Therefore, in the event this Court should rule in his favor, Leshin is essentially hoping that the Court will strike down the provision awarding Oliva for attorney's fees and arbitration expenses because the award does not specifically state that these portions are against Leshin "as Sucessor Trustee…."

In the event the Court does agree with Leshin, then at the very least, the judgment should reform the award such that Leshin, *as Trustee*, is liable for all amounts awarded to Oliva. Since the first award of the monetary damages references Leshin "individually and as Trustee," the later references to Leshin's liability for Oliva's attorney's fees and expenses, at the very least, would include liability in his capacity as trustee.

## **Prayer for Relief**

Oliva requests this Court to affirm the trial court's judgment in all respects, and further requests the Court to grant him such other relief to which he may be entitled.

Respectfully submitted,

BAYNE, SNELL, & KRAUSE
1250 N.E. Loop 410, Suite 725
San Antonio, Texas 78209
Telephone: (210) 824-3278
Telecopier: (210) 824-3937

By:    /s/ David C. "Clay" Snell
        David C. "Clay" Snell
        State Bar No. 24011309
ATTORNEY FOR APPELLEE
JUAN GERARDO OLIVA

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing has been served upon the following individuals through the Court's ECF/CM system on this 9th day of January, 2015.

Guadalupe Castillo
Zaffirini and Castillo
1407 Washington
Laredo, Texas 78042
Facsimile:  956/727-4448
Email:  gcast@zaffirini.com

David C. "Clay" Snell
Bayne, Snell & Krause
1250 N.E. Loop 410, Suite 725
San Antonio, Texas 78209
Facsimile:  210/824-3937
Email: dsnell@bsklaw.com

Eduardo Romero
Villarreal & Romero, PLLC
210 W. Del Mar Blvd., Suite 15
Laredo, Texas 78041
Facsimile:  956/727-2404
Email:  romero@vrlawfirm.com

 /s/ David C. "Clay" Snell
David C. "Clay" Snell

18